No. 24-5011

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

BRAD AMOS,
     Plaintiff-Appellant,

v.

THE LAMPO GROUP, LLC,
     Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Middle District of Tennessee

_____

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANT AND IN FAVOR OF REVERSAL

_____

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

JAMES DRISCOLL-MACEACHRON
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

# TABLE OF CONTENTS

Table of Authorities ............................................................................ ii

Statement of Interest ............................................................................1

Statement of the Issues ........................................................................2

Statement of the Case .........................................................................2

   A.  Statement of the Facts ...............................................................2

   B.  District Court's Decision ...........................................................10

Argument ...........................................................................................11

   I.   Amos sufficiently alleged a religious nonconformity claim.................11

     A.  Title VII prohibits discrimination based on nonconformity
       with an employer's religious beliefs. ....................................12

     B.  Amos plausibly pled that Lampo terminated him for failing
       to conform with Lampo's religious beliefs. .......................19

     C.  Amos's religious nonconformity claim is properly before
       this Court.............................................................................22

   II.  A plaintiff may state a Title VII claim for religious discrimination
     or a failure to accommodate based on his religious practices.............24

Conclusion.........................................................................................28

Certificate of Compliance ..................................................................30

Certificate of Service .........................................................................31

Addendum ......................................................................................A-1

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Adeyeye v. Heartland Sweeteners, LLC,*
    721 F.3d 444 (7th Cir. 2013)...................................................................27

*Anderson v. U.S.F. Logistics (IMC), Inc.,*
    274 F.3d 470 (7th Cir. 2001)...................................................................27

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...............................................................................19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................19

*Blackmon-Malloy v. U.S. Capitol Police Bd.,*
    575 F.3d 699 (D.C. Cir. 2009)..........................................................22, 23

*Blalock v. Metals Trades, Inc.,*
    775 F.2d 703 (6th Cir. 1985)...................................................................14

*Brown v. Polk Cnty.,*
    61 F.3d 650 (8th Cir. 1995).....................................................................27

*Campos v. City of Blue Springs,*
    289 F.3d 546 (8th Cir. 2002)...................................................................14

*Cooper Butt ex rel. Q.T.R. v. Barr,*
    954 F.3d 901 (6th Cir. 2020)...................................................................23

*Courie v. Alcoa Wheel & Forged Prod.,*
    577 F.3d 625 (6th Cir. 2009)...................................................................19

*Draper v. U.S. Pipe & Foundry Co.,*
    527 F.2d 515 (6th Cir. 1975)...................................................................27

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    575 U.S. 768 (2015)...............................................................................25

*EEOC v. United Health Programs of Am., Inc.*,
213 F. Supp. 377 (E.D.N.Y. 2016)..............................................................18, 21

*EEOC v. United Parcel Serv.*,
94 F.3d 314 (7th Cir. 1996) ........................................................................27

*Hart v. Hillsdale Cnty.*,
973 F.3d 627 (6th Cir. 2020) ......................................................................20

*Hebrew v. Tex. Dep't of Crim. Just.*,
80 F.4th 717 (5th Cir. 2023) .......................................................................27

*Henegar v. Sears, Roebuck & Co.*,
965 F. Supp. 833 (N.D. W. Va. 1997) .........................................................20

*Heyward v. Cooper*,
88 F.4th 648 (6th Cir. 2023) .......................................................................23

*Hudson v. City of Highland Park*,
943 F.3d 792 (6th Cir. 2019) ......................................................................16

*Keys v. Humana, Inc.*,
684 F.3d 605 (6th Cir. 2012) ......................................................................20

*Lesiv v. Ill. Cent. R.R. Co.*,
39 F.4th 903 (7th Cir. 2022) .......................................................................24

*McDaniel v. Essex Int'l, Inc.*,
696 F.2d 34 (6th Cir. 1982) ........................................................................26

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) .........................................................................2

*Nichols v. Snow*,
No. 3:03-cv-0341, 2006 WL 167708 (M.D. Tenn. Jan. 23, 2006) .................16

*Noyes v. Kelly Servs.*,
488 F.3d 1163 (9th Cir. 2007) ...........................................................12, 13, 14

*Owens v. City of N.Y. Dep't of Educ.*,
No. 21-2875, 2022 WL 17844279 (2d Cir. Dec. 22, 2022) ...........................14

iii

*Pedreira v. Ky. Baptist Homes for Child., Inc.,*
    186 F. Supp. 2d 757 (W.D. Ky. 2001) ........................................................15

*Pedreira v. Ky. Baptist Homes for Child., Inc.,*
    579 F.3d 722 (6th Cir. 2009) ...........................................................15, 20

*Prowel v. Wise Bus. Forms, Inc.,*
    579 F.3d 285 (3d Cir. 2009) ....................................................................13

*Reid v. Memphis Pub. Co.,*
    521 F.2d 512 (6th Cir. 1975) ...................................................................26

*Shapolia v. Los Alamos Nat'l Lab'y,*
    992 F.2d 1033 (10th Cir. 1993)......................................................12, 14, 17

*Shapolia v. Los Alamos Nat'l Lab'y,*
    773 F. Supp. 304 (D.N.M. 1991) .............................................................20

*Smith v. Pyro Mining Co.,*
    827 F.2d 1081 (6th Cir. 1987) ...................................................................28

*Tepper v. Potter,*
    505 F.3d 508 (6th Cir. 2007) ....................................................................16

*Terveer v. Billington,*
    34 F. Supp. 3d 100 (D.D.C. 2014) .....................................................17, 20

*Trans World Airlines, Inc. v. Hardison,*
    432 U.S. 63 (1977)..............................................................................25, 28

*Turic v. Holland Hosp., Inc.,*
    849 F. Supp. 544 (W.D. Mich. 1994) ......................................................16

*United States v. Clariot,*
    655 F.3d 550 (6th Cir. 2011) ....................................................................22

*Venters v. City of Delphi,*
    123 F.3d 956 (7th Cir. 1997)...........................................................13, 14, 17

*Virts v. Consol. Freightways Corp. of Del.,*
    285 F.3d 508 (6th Cir. 2002) ...................................................................26

*Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
   892 F.3d 332 (D.C. Cir. 2018)............................................................................24

*Willis v. Integrity Realty Grp., LLC*,
   No., 1:10-cv-01094, 2011 WL 3471555 (N.D. Ohio
   Aug. 9, 2011) ............................................................................................................15

*Young v. Sw. Sav. & Loan Ass'n*,
   509 F.2d 140 (5th Cir. 1975)...............................................................................14

**Statutes**

Title VII of the Civil Rights Act of 1964 Title VII

   42 U.S.C. § 2000e-2(a)(1) ...............................................................................1, 12

   42 U.S.C. § 2000e(j)........................................................................................1, 12, 25

Equal Employment Act of 1972, Pub. L. No. 92-261 § 7, 86 Stat.
   103, 103 (Mar. 24, 1972) .....................................................................................25

**Rules & Regulations**

Fed. R. App. P. 29(a)(2).........................................................................................1

**Other Authorities**

EEOC, Compliance Manual, Section 12: Religious
   Discrimination (Jan. 15, 2021),
   https://www.eeoc.gov/laws/guidance/section-12-
   religious-discrimination....................................................................13, 18, 26

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, which prohibits, inter alia, religious discrimination. 42 U.S.C. §§ 2000e-2(a)(1), 2000e(j). In this case, plaintiff Brad Amos alleged multiple theories of religious discrimination under Title VII, including one based on religious nonconformity and another based on his own religious practices. The district court erroneously dismissed both. As to religious nonconformity, the district court faulted Amos for not adequately pleading his own religious beliefs, but the law only required him to plead that his employer discriminated against him for not conforming to *its* religious beliefs. And, in dismissing Amos's claim based on his own religious conduct, the district court drew a baseless distinction between religious belief and religious conduct.

Because this appeal raises important questions about the proper legal frameworks for analyzing Title VII religious discrimination claims, the EEOC offers its views. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF THE ISSUES[1]

1. When a plaintiff alleges that his employer discriminated against him for failure to conform to its religious beliefs, does he state a claim under Title VII if his complaint describes the employer's beliefs and how the employer discriminated against him for lack of conformity with them?

2. When a plaintiff alleges that his employer discriminated against him based on his own religion, may he state a claim under Title VII by pleading a conflict between an employment requirement and his religious practice?

## STATEMENT OF THE CASE

### A.   Statement of the Facts[2]

Amos began work as a senior video editor for the Lampo Group, LLC ("Lampo") in August 2019. First Amended Complaint, R.21, Page ID #508, 511 ¶¶ 19, 53. David Ramsey, Lampo's owner and founder, "publicly identifies as a Christian and advocates for Christian beliefs." *Id.*, Page ID

---

[1] We take no position on any other issue in this appeal.

[2] Because the district court dismissed this action under Rule 12(b)(6), we base this factual narrative on the Amended Complaint except where otherwise noted. *See generally Meriwether v. Hartop*, 992 F.3d 492, 498 (6th Cir. 2021) ("accept[ing] the complaint's factual allegations as true" on a motion to dismiss).

#507-508 ¶¶ 11, 38. Amos's onboarding at Lampo emphasized Ramsey's beliefs and repeatedly "encourage[d] expressing deeply personal connection with . . . Ramsey and the Ramsey brand." *Id.*, Page ID #512 ¶¶ 58-59. It taught employees "to accept a set of beliefs uncritically" and to adopt the "Ramsey Way." *Id.*, Page ID #512 ¶ 57-58. Lampo also required Amos and other employees to attend individual meetings "designed in part to ensure [they] adhere[d] to Mr. Ramsey's personal religious beliefs both at the office and [at] home." *Id.*, Page ID #515 ¶ 95-96.

Amos put together a trailer for a Lampo podcast shortly after he arrived, which received "glowing reviews." *Id.*, Page ID #513 ¶¶ 74-75. Ramsey told Amos that he loved the trailer. *Id.*, Page ID # 513 ¶ 76. Then, at Amos's ninety-day performance review, Head of Post Production David DiCicco and another supervisor told him he was a "fantastic team member" and that "he would be given a leadership role with a pay increase." *Id.*, Page ID #514 ¶¶ 86-87.

After the COVID-19 pandemic began, Amos alleged, he "exercised extreme caution." *Id.*, Page ID #517 ¶¶ 121, 125, 127. He "had a deep religious devotion to protect the health and safety of his family," as well as "to follow the 'golden rule' to do no harm to others." *Id.*, Page ID #517

¶¶ 124, 126. Accordingly, Amos took "personal measures not to potentially infect his family with this virus," as well as "additional caution not to potentially spread the virus to his coworkers and friends." *Id.,* Page ID #517 ¶ 125, 127.

Lampo did not take the same approach. *See id.,* Page ID #517 ¶ 128. According to Amos, Ramsey and other Lampo leaders advocated against "taking preventative COVID-19 measures." *Id.* Ramsey "believed taking preventative measures [was] against the will of God," *id.* Page ID #518 ¶ 138, while he and other leaders at Lampo continued to say that measures intended to prevent COVID-19 "were not aligned with the religious principles held by Lampo or Ramsey." *Id.,* Page ID #518 ¶ 135. Lampo leadership also "actively denigrated any opposing religious beliefs that supported taking preventive measures." *Id.,* Page ID #518 ¶ 136. Meanwhile, "[r]eligious and staff mass gatherings were mandatory." *Id.,* Page ID #529 ¶ 257.

Ramsey held an all-staff meeting after Lampo's first confirmed COVID-19 case in March 2020, where he announced that "Lampo employees would not be working from home under any circumstance." *Id.,* Page ID #518 ¶¶ 132-134. At the meeting, Ramsey admonished that "fear of

4

working in the office because of COVID-19 demonstrated 'weakness of spirit.'" *Id.*, Page ID #518 ¶ 137 (emphasis omitted). Lampo also "expected its employees to adopt the religious view of Mr. Ramsey that taking COVID-19 precautions demonstrated 'weakness of spirit' and that prayer was the proper way to avoid COVID-19 infection." *Id.*, Page ID #520 ¶ 154. And Ramsey "compelled, commanded, and/or directed Lampo to impose his beliefs by terminating or demoting employees who did not agree with his spiritual beliefs or held religious beliefs in contravention of his own." *Id.*, Page ID #518 ¶ 139.

After the meeting, Amos was "[t]roubled by this news because of his Christian commitment to protecting the health of his family" and he approached Luke LeFevre, Head of Creative at Lampo, with his concerns about Lampo's approach to COVID-19. *Id.*, Page ID #509, 519 ¶¶ 28, 147. He questioned the lack of COVID-19 precautions in the workplace and mentioned working from home as a safer alternative to coming into the office. *Id.*, Page ID #519 ¶¶ 148-150. LeFevre "dismissed [Amos's] concerns" and told Amos he "needed to simply 'pray and keep moving forward.'" *Id.*, Page ID #520 ¶153 (emphasis omitted).

During this time, Lampo did not adopt preventive measures recommended by the Centers for Disease Control and Prevention or the Governor of Tennessee. *Id.,* Page ID #520 ¶ 159. Instead, it continued to hold weekly meetings in person, as well as in-person devotionals. *Id.,* Page ID #520 ¶ 158.

A few days after the meeting, around March 17, DiCicco raised the possibility of working from home with Amos. *Id.,* Page ID #520-521 ¶¶ 160-164. Amos decided to exercise that option, and Lampo agreed to allow it. *Id.,* Page ID #521 ¶¶ 162-166. Soon after, Ramsey learned that the governor would be issuing a stay-at-home order and that, "while he hated it," Lampo employees would work from home "due to federal and state regulations." *Id.,* Page ID #521 ¶¶ 167-168.

Even before that stay-at-home order issued on March 22, however, DiCicco told Amos that Lampo was an essential business and that Amos's documentary team were essential workers who would work in person. *Id.,* Page ID #521-522 ¶¶ 170, 172, 182. Amos offered that he could come into the office if he quarantined in his garage at home, but DiCicco would not allow him to take that precaution against COVID-19. *Id.,* Page ID #522 ¶¶ 177-178. DiCicco ultimately told Amos he could work at home but that

6

DiCicco would demote him to Assistant Editor for as long as he did so; when Amos returned to the office, DiCicco told him, he would resume his Senior Video Editor position. *Id.,* Page ID #522 ¶¶ 180-181.

Amos picked up his equipment on March 24, and DiCicco said he would call Amos to tell him what to work on. *Id.,* Page ID #522, 523 ¶¶ 184, 189. Amos spent weeks trying to contact DiCicco for assignments, but DiCicco never responded. *Id.,* Page ID #523 ¶¶ 190-191, 194. Meanwhile, Amos attended Lampo meetings and devotionals online. *Id.,* Page ID #523 ¶ 191. Then, on April 9, DiCicco contacted Amos and told him he had missed a deadline. *Id.,* Page ID #523 ¶ 194. DiCicco also officially demoted Amos and said he would call back with an assignment, but he did not. *See id.,* Page ID #524 ¶¶ 198-200. Instead, he scheduled a meeting for April 13. *See id.,* Page ID #524 ¶ 200-201.

Amos, DiCicco, LeFevre, and another supervisor attended that meeting. *Id.,* Page ID #524 ¶¶ 200-202. Amos alleged that the managers present were hostile, and the meeting "quickly devolved into a discussion about COVID-19 and Plaintiff's relationship with his wife." *Id.,* Page ID #524-525 ¶¶ 204, 208. LeFevre suggested Amos find another job, and then removed Amos from the documentary project that had been "the sole

purpose for his employment." *Id.,* Page ID #525-526 ¶¶ 207, 217-219.

LeFevre told Amos he "needed to 'check his humility.'" *Id.,* Page ID #526

¶ 221. Amos understood that to mean that he "should give up his personal

beliefs in exchange for the beliefs of the company leader; specifically . . .

choosing to not put his family in danger because Ramsey believed taking

COVID precautions demonstrated 'weakness of spirit.'" *Id.,* Page ID #526

¶ 222. According to Amos, Lampo then assigned him demeaning work and

required him to attend additional meetings "designed to indoctrinate

[Amos] to the personal religious views of Dave Ramsey as a spiritual

leader." *Id.,* Page ID #526-527 ¶¶ 223-228.

After Tennessee's stay-at-home order ended on April 30, Lampo

required all employees to return to the office, which Amos did. *Id.,* Page ID

#529 ¶ 252-253. In the office, Lampo did not follow guidelines to avoid

COVID-19 infection, and employees, including Amos, "were mocked and

derided" when they wore masks. *Id.,* Page ID #530 ¶¶ 259-263; *see also id.,*

Page ID #535 ¶ 317 ("Lampo, at Ramsey's direction, also criticized

Plaintiff's exercise of his religious beliefs such as social distancing and

wearing a mask"). The video department supervisor asked Amos if he

would rather leave the company and then told Amos he would not receive

the raise he had been promised. *Id.*, Page ID #533-534 ¶¶ 301, 308-310. She also told him he would never receive a raise or promotion at Lampo. *Id.*, Page ID #534 ¶ 311.

On July 31, 2020, Lampo terminated Amos. *Id.*, Page ID #535 ¶¶ 318-319. LeFevre said Amos "was not a good fit" and "demean[ed] [Amos's] attempts to take preventative measures." *Id.*, Page ID #535 ¶¶ 319-320. In doing so, he specifically referenced Amos standing away from other employees—which Amos had done only because of Lampo's refusal to follow COVID-19 precautions. *Id.*, Page ID #535 ¶¶ 320-321. Amos believed Lampo "also terminated [him] for his 'lack of humility' as a result of his failure to submit to Defendant's religious beliefs throughout his employment and in his one-on-one meetings." *Id.*, Page ID #535 ¶ 322.

After receiving a notice of right to sue from the EEOC, Amos filed suit against Lampo and Ramsey in district court. Complaint, R.1, Page ID #2; Notice, R-1.1, Page ID #36-40. The defendants moved to dismiss, and Amos amended his complaint. *See* First Amended Complaint, R.21, Page ID #506-543.

### B.   District Court's Decision

Lampo moved to dismiss Amos's amended complaint in March 2022,

Lampo Motion to Dismiss, R. 30, Page ID #901-903, and the parties

completed briefing a month later. *See* Lampo Reply to Motion to Dismiss,

R. 39, Page ID #1408-1412. After more than a year of discovery, Lampo

moved for summary judgment. *See* Lampo Motion for Summary Judgment,

R. 113, Page ID #2652-2654. The parties completed summary judgment

briefing in September 2023. Lampo Reply to Motion for Summary

Judgment, R. 131, Page ID #4312-4323. Three months later, the district court

granted Lampo's 2022 motion to dismiss. Memorandum Opinion and

Order ("Order"), R. 136, Page ID #4367-4399.

The court held that Amos had not sufficiently pled any Title VII

claims. In relevant part, the court held that a plaintiff alleging religious

discrimination "needs to have alleged *a religious belief* that conflicts with an

*employment requirement*." *Id.*, Page ID #4379. According to the court, "it is

not enough that [Amos] allege a conflict between Lampo's requirement and

*the conduct that [Amos] believes is required* based on a general application of

his religious beliefs." *Id.* The court thus held that Amos's "claim fails

outright" because he did not allege a conflict between Lampo's

requirements and "some *religious belief* of Plaintiff." *Id.*, Page ID #4382. The court also held that Amos had not sufficiently pled religious beliefs of his own. *Id.*, Page ID #4387.

The court used similar logic to reject Amos's religious nonconformity theory, reasoning that "[i]t is . . . not enough that the plaintiff was terminated for not complying with an employment requirement that happens to be grounded on the employer's religious beliefs." *Id.*, Page ID #4379 n.11. According to the court, "[t]he conflict causing the non-compliance must stem from the plaintiff's *own* religious beliefs." *Id.*

## ARGUMENT

## I. Amos sufficiently alleged a religious nonconformity claim.

The district court erred when it held that Amos failed to plead a valid religious discrimination claim by alleging that Lampo terminated his employment for failure to conform to its religious views. Courts have long recognized Title VII religious nonconformity claims like Amos's, and they do not require plaintiffs to plead or prove specifically that their own beliefs were religious or that those beliefs caused the conflict—only that the employer discriminated against the plaintiff for not conforming to the

employer's religious beliefs.[3] Viewed under the correct standard, Amos sufficiently pled a Title VII claim based on his nonconformity with Lampo's religious beliefs. Finally, we note that Amos's religious nonconformity claim is properly before this Court.

### A. Title VII prohibits discrimination based on nonconformity with an employer's religious beliefs.

Employers may not discriminate "because of [an] individual's . . . religion," 42 U.S.C. § 2000e-2(a)(1), and Title VII defines religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). In doing so, Title VII "protect[s] against requirements of religious conformity and as such protects those who refuse to hold, as well as those who hold, specific religious beliefs." *Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1036 (10th Cir. 1993). A nonconformity claim arises from the employer's "perception that [the plaintiff] did not share"

---

[3] Courts sometimes refer to this type of claim as a "reverse religious discrimination" claim, as Amos did in his opening brief on appeal. *See* Opening Br. 21-32; *see also, e.g.*, *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). That term arises, somewhat confusingly, from earlier decisions construing claims of discrimination against a member of a majority group. *See Shapolia v. Los Alamos Nat'l Lab'y*, 992 F.2d 1033, 1038 & n.6 (10th Cir. 1993). To avoid such confusion, and despite the terminology in some of the case law, we use the more precise term "religious nonconformity claim."

his or her religious beliefs. *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997); *see also id.* (holding that the plaintiff "need only show that her perceived religious shortcomings . . . played a motivating role in her discharge"); *see also* EEOC, Compliance Manual, Section 12: Religious Discrimination, § 12-II.A.1 (Jan. 15, 2021) ("Compliance Manual"), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (describing discrimination against an employee or applicant who "does not share the employer's religious beliefs"); *id.* § 12-I.A.1 Ex.1.

Courts of appeals across the country have recognized the nonconformity theory of religious discrimination.[4] For example, the Third Circuit observed that "Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009). And the Ninth Circuit held that a jury could find for the plaintiff on a nonconformity claim because the plaintiff's "lack of adherence to the religious beliefs promoted by the management of [the defendant] was the genesis of the discrimination." *Noyes v. Kelly Servs.*,

---

[4] We are unaware of any circuit court that has held that Title VII does *not* prohibit discrimination based on religious nonconformity.

488 F.3d 1163, 1168 (9th Cir. 2007); *see also Campos v. City of Blue Springs*,

289 F.3d 546, 551 (8th Cir. 2002) (affirming jury verdict when the plaintiff

"presented sufficient evidence to allow the jury to find that she was forced

to quit because she was not a Christian"); *Young v. Sw. Sav. & Loan Ass'n*,

509 F.2d 140, 141 (5th Cir. 1975) ("Congress, through Title VII, has provided

the courts with a means to preserve religious diversity from forced

religious conformity." (footnote omitted)); *accord Venters*, 123 F.3d at 972;

*Shapolia*, 992 F.2d at 1036; *cf. Owens v. City of N.Y. Dep't of Educ.*,

No. 21-2875, 2022 WL 17844279, at *2 (2d Cir. Dec. 22, 2022) ("assum[ing]

*arguendo*" that plaintiff could establish religious discrimination claim by

showing, inter alia, that she was subjected to an adverse employment

action because of "failure to hold or follow her employer's religious

beliefs").

    This case presents an opportunity for this Court to join its sister

circuits in addressing this important aspect of Title VII's protections against

religious discrimination. This Court's longstanding precedent already

supports recognition of a religious nonconformity claim. Nearly forty years

ago, this Court described the essence of the claim in *Blalock v. Metals Trades,*

*Inc.*, 775 F.2d 703, 708 (6th Cir. 1985), where it reversed the grant of

14

summary judgment to an employer who gave "special consideration to those persons who shared his religious views" and stopped helping the plaintiff when their religious views no longer aligned. And, in *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 727 (6th Cir. 2009), this Court noted that "[c]ourts have interpreted [Title VII] to preclude employers from discriminating against an employee . . . because the employee fails to comply with the *employer's* religion."[5]

Meanwhile, district courts in this Circuit already recognize Title VII religious nonconformity claims. As one court stated, Title VII forbids "terminat[ing] employees because the employees' conduct or religious beliefs are inconsistent with those of their employers." *Willis v. Integrity Realty Grp., LLC*, No., 1:10-cv-01094, 2011 WL 3471555, at *4 (N.D. Ohio Aug. 9, 2011); *see also Pedreira v. Ky. Baptist Homes for Child., Inc.*, 186 F. Supp. 2d 757, 760 (W.D. Ky. 2001) ("Title VII also precludes an employer from discriminating by utilizing an individual's failure to embrace

---

[5] This Court ultimately did not expressly recognize a religious nonconformity claim in *Pedreira* because it found there was not one at issue in the case. The parties did not dispute that the plaintiff was fired "on account of her sexuality" and had not pled facts "that would even allow an inference that she was discriminated against on account of . . . her religious differences with [her employer]." 579 F.3d at 728.

the *employer's* faith."), *aff'd on other grounds,* 579 F.3d 722 (6th Cir. 2009);

*Turic v. Holland Hosp., Inc.*, 849 F. Supp. 544, 551 (W.D. Mich. 1994) ("The

fact that plaintiff's disagreement on religious issues with her employer is

not premised on a faith of her own does not preclude her suit."), *aff'd in*

*part, rev'd in part,* 85 F.3d 1211 (6th Cir. 1996). And another court held that

the plaintiff "established a prima facie case of discrimination based on his

failure to comport with [his supervisor's] religious beliefs." *Nichols v. Snow*,

No. 3:03-cv-0341, 2006 WL 167708, at *13 (M.D. Tenn. Jan. 23, 2006).

In requiring Amos to plead his own religious beliefs in support of a

religious nonconformity theory, the district court conflated the elements of

different types of religious discrimination claims. When a plaintiff alleges a

failure to accommodate *his* religious observance or practice, then his

religious beliefs, observances, or practices are a necessary element of the

claim. *See Tepper v. Potter*, 505 F.3d 508, 513-14 (6th Cir. 2007) (describing

religious accommodation claim). The same would hold true for a

conventional religious discrimination claim, such as where an employer

refuses to hire an applicant or fires an employee because of the applicant's

or employee's religious beliefs. *See generally Hudson v. City of Highland Park*,

943 F.3d 792, 801-02 (6th Cir. 2019) ("Title VII prohibits an employer from

16

discriminating against any individual . . . because of his membership in a protected class, which includes a religious group.") (cleaned up).

For religious nonconformity claims, however, the focus is not on "some identifiable characteristic of the plaintiff." *Shapolia*, 992 F.2d at 1038. Instead, "it is the religious beliefs of the employer, and the fact that [the plaintiff] does not share them, that constitute the basis of the claim." *Id.* The plaintiff's own religious beliefs are not at issue in a religious nonconformity claim. *See Venters*, 123 F.3d at 972 ("What matters in this context is not so much what [the plaintiff's] own religious beliefs were, but [the defendant's] asserted perception that she did not share his own."). Courts thus look at whether the employer discriminated based on "the employee's failure to hold or follow his or her employer's religious beliefs." *Shapolia*, 992 F.2d at 1038; *Terveer v. Billington*, 34 F. Supp. 3d 100, 116-17 (D.D.C. 2014).

The district court appeared to misinterpret Amos's allegations, reasoning that Amos could not state a claim based on "terminat[ion] for not complying with an employment requirement that *happens to be grounded* on the employer's religious beliefs." Order, Page ID #4379 n.11 (emphasis added). We agree that the mere application of a neutral employment rule—even if religion inspired that rule—may not give rise to a religious

17

nonconformity claim. As the EEOC's Compliance Manual observes in a similar context, "[a] claim of harassment based on coerced religious participation . . . only arises where [the harassment] was intended to make the employee conform to or abandon a religious belief or practice." Compliance Manual § 12-III.A.1; *see also EEOC v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 408 (E.D.N.Y. 2016) (denying summary judgment on religious nonconformity claim because, among other things, a jury could find the employer terminated the plaintiff "based on her refusal to adhere to [the employer's] 'religious dictate' that she move to Long Island"). Thus, for example, a Christian employer that closes its operations on Sundays because of its Sabbath practice does not violate Title VII by not allowing any of its employees to work for it on Sundays.

But Amos did not allege a neutral application of a religiously grounded rule here. Rather, Amos alleged that Lampo management enforced its rules—many of which were explicitly religious—specifically to make him and other employees conform to Lampo's religious beliefs. *See, e.g.*, First Amended Complaint, R.21, Page ID #515, 518, 526, 534 ¶¶ 95-96, 136, 139, 223-228, 316-317. We respectfully ask this Court to recognize that

religious-nonconformity allegations like Amos's are cognizable under Title VII.

## B. Amos plausibly pled that Lampo terminated him for failing to conform with Lampo's religious beliefs.

The district court did not assess the adequacy of Amos's religious nonconformity claim beyond holding, incorrectly, that "[it] is . . . not enough that the plaintiff was terminated for not complying with an employment requirement that happens to be grounded on the employer's religious beliefs." *See* Order, R. 136, Page ID #4379 n.11. Still, this Court need not remand for further analysis on whether his claim should be dismissed under Rule 12(b)(6) because Amos plausibly alleged a religious nonconformity claim on the face of his complaint.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations need only be sufficient to plausibly state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is not demanding, as a court "cannot dismiss for factual implausibility 'even if it [would] strike[ ] a savvy judge that . . . recovery is very remote and unlikely.'" *Courie v. Alcoa Wheel & Forged Prod.*, 577 F.3d 625, 630 (6th Cir. 2009) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And,

as this Court has recognized, a plaintiff need not plead a complete prima facie case to meet that standard. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012); *Pedreira*, 579 F.3d at 728 (same). Meanwhile, this Court "accept[s] the plaintiff's factual allegations as true and draw[s] all reasonable inferences in his favor." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).

Courts assessing the validity of religious nonconformity claims look primarily for allegations that the employer's religious beliefs motivated the adverse action at issue. In *Henegar v. Sears, Roebuck & Co.*, 965 F. Supp. 833, 838 (N.D. W. Va. 1997), the court found it sufficient that the plaintiff "allege[d] that plaintiff suffered an adverse hiring decision because her prior conduct had offended her former supervisor's religious beliefs." *See also Shapolia v. Los Alamos Nat'l Lab'y*, 773 F. Supp. 304, 305 (D.N.M. 1991) (denying motion to dismiss where "[t]he plaintiff states that he was discriminated against because he, as a 'non-Mormon,' does not share his supervisors' religious beliefs"), *aff'd on other grounds,* 992 F.2d 1033 (10th Cir. 1993). And, in *Terveer*, 34 F. Supp. 3d at 117, a district court held that a religious nonconformity claim survived a motion to dismiss when a factfinder "could infer from Plaintiff's allegation that

[his supervisor] repeatedly engaged in religious lectures targeted at imposing [his] 'conservative Catholic beliefs' on Plaintiff that religion . . . played a role in Defendant's employment decisions." *See also United Health Programs*, 213 F. Supp. 3d at 409 (denying summary judgment in part based on allegations the employer had mandatory "group meetings discussing highly personal topics" and terminated a plaintiff after she "began to withdraw from spiritual activity in the workplace").

Amos alleged sufficient facts to satisfy this standard. According to Amos, Ramsey is avowedly and publicly Christian, and Lampo repeatedly and explicitly sought to make its employees conform with Ramsey's particular Christian beliefs. First Amended Complaint, R. 21, Page ID #507, 510, 515, 518 ¶¶ 11, 38, 96, 136, 139. Employees had to attend meetings "designed in part to ensure [they] adhere[d] to Mr. Ramsey's personal religious beliefs," and Ramsey "directed Lampo to impose his beliefs by terminating or demoting employees who did not agree with his spiritual beliefs or held religious beliefs in contravention of his own." *Id.*, Page ID #515, 518 ¶¶ 96, 139.

Lampo enforced the need for religious conformity with even greater force after the COVID-19 pandemic began. *See id.*, Page ID #518, 520

21

¶¶ 135-137, 153-154. And, because Amos failed to conform to Lampo's beliefs, Lampo removed Amos from his primary project. *Id.*, Page ID #526 ¶¶ 217-219, 221-222. Lampo then required Amos to attend meetings "designed to indoctrinate [Amos] to the personal religious views of Dave Ramsey as a spiritual leader." *Id.*, Page ID #526-527 ¶ 223-228. Amos alleged that these attempts to force him to conform to Lampo's religious beliefs continued through his termination. *See id.*, Page ID #526, 530, 535 ¶¶ 224, 261-263, 316-321. Amos then pled that he "was terminated for failing to follow Lampo's particular view that prayer was the exclusive way to prevent COVID infection." *Id.*, Page ID #537 ¶ 342. These allegations, taken as true, plausibly plead that Lampo terminated Amos for failing to conform to its religious beliefs.

### C. Amos's religious nonconformity claim is properly before this Court.

In the district court, Lampo intimated that Amos forfeited his nonconformity claim by arguing it only in response to Lampo's summary judgment motion. But "there can be no forfeiture 'where the district court nevertheless addressed the merits of the issue.'" *United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (quoting *Blackmon-Malloy v. U.S. Capitol*

*Police Bd.*, 575 F.3d 699, 707 (D.C. Cir. 2009). Thus, in *Cooper Butt ex rel. Q.T.R. v. Barr*, 954 F.3d 901, 904-05 (6th Cir. 2020), this Court did not apply the forfeiture rule because "the district court ruled on the merits of Defendants' motion based on Plaintiff's allegations in his complaint, and Plaintiff's complaint was sufficient to provide Defendants with the requisite notice of all of the claims that he now presents on appeal." *See also Heyward v. Cooper*, 88 F.4th 648, 654-55 (6th Cir. 2023) (explaining there is no forfeiture when plaintiff challenges "the legal grounds offered by the district court" because "the defendant will be on notice of the contents of the complaint and of the district court's basis for dismissing it").

Here, Amos is directly challenging the district court's legal analysis and conclusion that he was required to plead that Lampo terminated him because of his religious beliefs. *See* Order, R. 136, Page ID #4379 & n.11. And, given that Lampo neither explicitly moved to dismiss Amos's religious nonconformity claim nor offered any arguments about its viability in its motion to dismiss, it would also be inappropriate to expect Amos as the nonmovant to have made those arguments for Lampo and

then responded to them.[6] *See* Opening Br. at 21-22; *cf. Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 914-15 (7th Cir. 2022) ("[A] party opposing a motion for summary judgment needs to respond only to arguments the moving party actually made, not others that the moving party might have made but did not."); *see also Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018) ("[A] party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief.").

## II. A plaintiff may state a Title VII claim for religious discrimination or a failure to accommodate based on his religious practices.

The district court also misconstrued Title VII's definition of religion. The court held that it was insufficient for a plaintiff to allege a conflict between religious conduct and an employment requirement—instead, according to the court, "some *religious belief* of Plaintiff" was required. Order, R. 136, Page ID #4382. Title VII, however, protects religious

---

[6] We also note that Amos addressed his religious nonconformity claim at length in his summary judgment response, before the district court granted Lampo's motion to dismiss. Amos Response to Summary Judgment, R. 121, Page ID #2734-2738.

conduct, including religious practices and observances, as well as religious beliefs.

Congress amended Title VII in 1972 to protect "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261 § 7, 86 Stat. 103, 103 (Mar. 24, 1972). "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for *the religious practices* of his employees and prospective employees." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977) (emphasis added). Thus, the Supreme Court held that "the employer's statutory obligation to make reasonable accommodation for *the religious observances* of its employees, short of incurring an undue hardship, is clear." *Id.* (emphasis added). And the Supreme Court recently reaffirmed Title VII's protections for religious observances and practices. In *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774-75 (2015), the Supreme Court noted that Title VII's protections are not limited to religious beliefs; instead "religious practice is one of the protected characteristics that cannot be accorded disparate treatment and must be accommodated."

These categories of religious conduct are expansive. They may "include, for example, attending worship services, praying, wearing religious garb or symbols, displaying religious objects, adhering to certain dietary rules, proselytizing or other forms of religious expression, and refraining from certain activities." Compliance Manual § 12-I.A.1. This Court has thus addressed failure-to-accommodate claims involving religious practices such as not working on Saturdays, *Reid v. Memphis Pub. Co.*, 521 F.2d 512, 517 (6th Cir. 1975), refusing to join a union or pay union dues, *McDaniel v. Essex Int'l, Inc.*, 696 F.2d 34, 37-38 (6th Cir. 1982), and refusing to work sleeper runs for a commercial trucking company alongside female employees, *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 512, 516-17 (6th Cir. 2002) (discussing the plaintiff's request to avoid these runs "to avoid the appearance of evil" in light of his religious beliefs). *See also Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515, 519 (6th Cir. 1975) (holding that the defendant "did not undertake a reasonable accommodation of Draper's religious practices and observances" when the plaintiff refused to work Saturdays).

Other circuits similarly recognize that Title VII's protections extend to religious practices. The Eighth Circuit addressed a failure-to-

accommodate claim based on "religious activities," including proselytizing. *Brown v. Polk Cnty.*, 61 F.3d 650, 652, 654-55 (8th Cir. 1995). And the Seventh Circuit recognized a plaintiff's "religious practice" of saying "Have a Blessed Day" at the end of written or telephone interactions. *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 473, 475-76 (7th Cir. 2001); *see also Hebrew v. Tex. Dep't of Crim. Just.*, 80 F.4th 717, 721 (5th Cir. 2023) (employer failed to accommodate "one of [the plaintiff]s fundamental religious practices by requiring him to cut his long hair and long beard in violation of his religious vow"); *EEOC v. United Parcel Serv.*, 94 F.3d 314, 319 (7th Cir. 1996) (noting no dispute that plaintiff "made out a standard prima facie case" of reasonable accommodation based on his religious practice of wearing a beard). Critically, "the religious beliefs and practices" need not be "familiar as beliefs and practices closer to the modern American mainstream" because "the protections of Title VII are not limited to familiar religions." *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 450-52 (7th Cir. 2013) (addressing request for leave to travel to Nigeria to attend father's funeral rites).

In ruling that Title VII does not protect religious "conduct," even if "such conduct [is] based on a religious belief," the district court undertook

27

no analysis of Title VII's language and cited only two district court decisions. *See* Order, R. 136, Page ID #4378-4379. Those decisions relied on a line of cases from this Court going back to *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), which articulates the first prong of the prima facie case as "hold[ing] a sincere religious belief that conflicts with an employment requirement."

The district court erred in narrowly focusing on the "religious belief" wording derived from *Smith*. Notwithstanding *Smith*'s formulation of the prima facie case, other parts of *Smith* make it clear that this Court construed religion, correctly, to include religious practices. *See id.*at 1084-85 (noting with favor the Supreme Court's holding that an employer must "make reasonable accommodations, short of undue hardship, for the *religious practices* of its employees and prospective employees") (quoting *Hardison*, 432 U.S. at 74) (emphasis added). Thus, we ask this Court to clarify that neither *Smith* nor any other authority supports the distinction the district court drew between religious belief and religious conduct.

## CONCLUSION

For all these reasons, the judgment of the district court should be vacated, and the case remanded for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

s/ *James Driscoll-MacEachron*
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

March 20, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 5,812 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

> s/*James Driscoll-MacEachron*
> JAMES DRISCOLL-MACEACHRON
> Attorney
> EQUAL EMPLOYMENT
> OPPORTUNITY COMMISSION
> Office of General Counsel
> 131 M St. N.E., 5th Floor
> Washington, D.C. 20507
> (602) 661-0014
> james.driscoll-maceachron@eeoc.gov

March 20, 2024

## CERTIFICATE OF SERVICE

I certify that on this 20th day of March, I electronically filed the

foregoing brief in PDF format with the Clerk of Court via the appellate

CM/ECF system. I certify that all counsel of record are registered CM/ECF

users, and service will be accomplished via the appellate CM/ECF system.

s/ *James Driscoll-MacEachron*
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(602) 661-0014
james.driscoll-maceachron@eeoc.gov

# Addendum

Designation of Relevant District Court Documents

| Record Entry # | Document Description | Page ID # Range |
|---|---|---|
| 1 | Complaint | 1-35 |
| 1-1 | Notice of Right to Sue | 36-40 |
| 21 | First Amended Complaint | 506-543 |
| 30 | Lampo Motion to Dismiss | 901-903 |
| 39 | Lampo Reply to Motion to Dismiss | 1408-1412 |
| 113 | Lampo Motion for Summary Judgment | 2652-2654 |
| 131 | Lampo Reply to Motion for Summary Judgment | 4312-4323 |
| 136 | Memorandum Opinion and Order | 4367-4399 |