CASE NO. 24-5011

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

BRAD AMOS,

*Plaintiff-Appellant,*

-v.-

THE LAMPO GROUP, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middle District of Tennessee

## BRIEF OF DEFENDANT-APPELLEE

Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

## TABLE OF CONTENTS

Table of Contents ...................................................................................2

Table of Authorities .................................................................................3

Statement Regarding Oral Argument ......................................................7

Statement of Jurisdiction.........................................................................8

Statement of Issues...................................................................................9

Statement of the Case.............................................................................11

Summary of the Argument.....................................................................13

Argument.................................................................................................14

      I.     Title VII/THRA – Religious Discrimination ......................................17

         A. Plaintiff-Appellant Waived Reverse Religious Discrimination Claim .................................................................................................18

         B. Pleading Religious Discrimination under Title VII ......................25

            1.  The Pleading Standard for Title VII Religious Discrimination ..................................................................26

            2.  Plaintiff-Appellant Failed to Plausibly Plead Religious Discrimination ..................................................................34

      II.    Fraud.................................................................................................39

      III.   Tenn. Code Ann. §50-1-102 - Deceptive Representation ...................45

Conclusion ..............................................................................................51

Certificate of Compliance ......................................................................52

Certificate of Service ..............................................................................53

Designation of Relevant District Court Documents ..............................54

## TABLE OF AUTHORITIES

**Cases**

*Abramson v. William Paterson College of New Jersey*,
260 F.3d 265 (3d Cir. 2001) ....................................................33

*Abriq v. Hall*, 295 F. Supp. 3d 874 (M.D. Tenn. 2018) .........................................36

*Adu-Beniako v. Reimann*,
No. 21-2978, 2022 WL 4538372 (6th Cir. July 12, 2022) ......................................18

*Alexander v. Carter for Byrd*, 733 F. App'x. 256 (6th Cir. 2018) ..................18, 19

*Allstate Ins. Co. v. Global Medical Billing, Inc.*,
520 F. App'x. 409 (6th Cir. 2013) .........................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................35

*Berger v. Medina County Ohio Bd. Of County Com'rs*,
295 F. App'x. 42 (6th Cir. 2008) .........................................................18

*Braun v. Village of Palatine*, 56 F.4th 542 (7th Cir. 2022) ...................................18

*Brewer v. United Wisconsin Insurance Co.*,
972 F. Supp. 2d 1044 (M.D. Tenn. 2013) ..............................................49

*Brown v. VHS of Mich., Inc.*, 545 F. App'x. 368 (6th Cir. 2013) ..........................19

*Burress v. City of Franklin, Tenn.*, 809 F.Supp.2d 795 (M.D. Tenn. 2011) ..........19

*Burwell v. Hobby Lobby*, 573 U.S. 681 (2014)........................................................30

*Campos v. City of Blue Springs*, 289 F.3d 546 (8th Cir. 2002) ......................33, 34

*Chavez v. Broadway Elec. Serv. Corp.*,
245 S.W.3d 398 (Tenn. Ct. App. 2007) ...............................................45

*Cochran v. United Parcel Serv., Inc.*, 137 F. App'x. 768 (6th Cir. 2005) ............23

*Dage v. Time Warner Cable*, 395 F.Supp.2d 668 (S.D. Ohio 2005) .....................19

*DiPasquale v. Hawkins*, 748 F. App'x. 688 (6th Cir. 2018) ................................38

*Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839 (6th Cir. 2006) ........................42

*Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487 (3d Cir. 2017) ......................37

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) ........................36

3

*Gilinsky v. Marcus & Millichap Real Est. Inv. Servs. of Seattle, Inc.*,
No. 3:20-CV-00261, 2021 WL 2897300 (M.D. Tenn. July 9, 2021) ....................49

*Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 F. App'x. 567 .......................19

*Hanzel v. Arter*, 625 F. Supp. 1259 (S.D. Ohio 1985) ............................................37

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993) ...................................................33

*Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 274 (Tenn. Ct. App. 1999) ..............48

*Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002) ..........48

*In re Kingate Management Limited Litigation*,
 746 F. App'x. 40 (2d Cir. 2018) .............................................................................18

*In re Newman*, No. 3:16-BK-33533-SHB, 2017 WL 2589318,
at *5 (Bankr. E.D. Tenn. June 14, 2017) .................................................................49

*Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir. 2000) ..............................19

*Jordan v. Matthews Nissan, Inc.*, 539 F. Supp. 3d 848 (M.D. Tenn. 2021) ..........17

*Kensu v. Corizon, Inc.*, 5 F.4th 646 (6th Cir. 2021)......................................15, 35, 36

*Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627 (Tenn. Ct. App. 2000) .........................46

*Lawhead v. Brookwood Mgmt. Co., LLC*,
No. 5:22-CV-00886-JRA, 2023 WL 2691718 (N.D. Ohio Mar. 29, 2023)  36,37, 38

*Lee v. Northeast Illinois Regional Commuter Railroad Corporation*,
912 F.3d 1049 (7th Cir. 2019) .................................................................................18

*Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47 (2d Cir. 1988) ......................37

*McCartney v. Austin*,
31 A.D.2d 370, 298 N.Y.S.2d 26 (N.Y. App. Div. 1969) .......................................37

*Metro. Prop. & Cas. Ins. Co. v. Bell*,
No. 04-5965, 2005 WL 1993446 (6th Cir. Aug. 17, 2005) ....................................48

*Neff v. Cherokee Ins. Co.*, 908 704 S.W.2d 1 (Tenn. 1986) ..................................48

*Noyes v. Kelly Services*, 488 F.3d 1163 (9th Cir. 2007) ........................................34

*Owens v. State*, 908 S.W.2d 923 (Tenn. 1995) ......................................................48

4

*PNC Multifamily Capital Institutional Fund XXVI LP v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. 2012) ........................................39

*Pedreira v. Ky. Baptist Homes for Children, Inc.*,

579 F.3d 722 (6th Cir. 2009) ................................................................23

*Pinney Dock and Transp. Co. v. Penn Central Corp.,*

838 F.2d 1445 (6th Cir. 1988) ..............................................................23

*Prowel v. Wise Bus. Forms, Inc.*,

579 F.3d 285 (3d Cir. 2009) ............................................................32, 33

*Risher v. Cherokee Buick-Pontiac-Oldsmobile-GMC Truck, LLC*,

No. E2002-1644-COA-R3-CV, 2003 WL 21755055

(Tenn. Ct. App. July 28, 2003) ..................................................46, 47, 49

*Sallee v. Barrett*, 171 S.W.3d 822 (Tenn. 2005) ...................................48

*Savel v. MetroHealth System*, 96 F.4th 932 (6th Cir. 2024) ...................27

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) ...................19, 20, 23

*Shipp v. Ditch Witch Equip. of Tennessee, Inc.*,

No. M200502354COAR3CV, 2007 WL 700979

(Tenn. Ct. App. Mar. 7, 2007) .......................................................46, 49

*Smith v. BAC Home Loans Servicing, LP*,

552 F. App'x. 473, 479 FN50 (6th Cir. 2014) .......................................20

*Smith v. Mitlof*, 198 F.Supp.2d 492 (S.D.N.Y. 2002) ............................42

*State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) ..........................48

*Taft Broad. Co. v. United States*, 929 F.2d 240 (6th Cir. 1991) .............23

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,

83 F.4th 514 (6th Cir. 2023) ................................................................41

*Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) .................27

*Tucker v. Sierra Builders*, 180 S.W.3d 109 (Tenn. Ct. App. 2005) .......47

*Weiland v. Palm Beach County Sheriff's Office*,

5

792 F.3d 1313 (11th Cir. 2015)

...................................................................................................15

*Young v. Southwestern Savings and Loan Association,*

509 F.2d 140 (5th Cir. 1975) ...........................................................33

*Zanecki v. Health Alliance Plan of Detroit,*

577 F. App'x. 394 (6th Cir. 2014) ....................................................18


**Federal Statutes and Rules**

U.S. Constitution, amend. 1 ......................................................27, 28,29

28 U.S.C. §1331 ...............................................................................8

28 U.S.C. §1367 ...............................................................................8

28 U.S.C. §1332 ...............................................................................8

42 U.S.C. §2000e ...................................................................8, 26, 27

42 U.S.C. §2000e-2.................................................................26, 27

42 U.S.C. §2000bb-1................................................................27, 28

29 C.F.R. §1605.2 ............................................................................26

Fed. R. App. Pro. 28(a)(4)(A)...........................................................8

Fed. R. Civ. Pro. 12(b)(6) ........................................................7, 9, 13

Fed. R. Civ. Pro. 9(b) ...................................... 39, 41, 42, 44, 45, 46, 47, 48

**Tennessee Statutes and Rules**

Tenn. Code Ann. §50-1-102 ......................... 8, 11, 13, 45, 46, 47, 48, 50,

Tenn. Code Ann. §4-21-101 ..............................................................9

Tenn. Code Ann. §50-1-304 .............................................................11

Tenn. Code Ann. § 47-18-109 ....................................................46, 47, 48

Tenn. Code Ann. § § 47-18-104 .........................................................47

6

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee does not request oral argument. This case is on appeal from the district court's dismissal of Plaintiff-Appellant's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It is not complicated. Plaintiff-Appellant's pleadings, taken as true and construed in a light most favorable to him, either state a claim against Defendant-Appellee upon which relief can be granted or they do not.

## STATEMENT OF JURISDICTION

Defendant-Appellee agrees with Plaintiff-Appellant's jurisdictional statement except his characterization of the district court's subject matter jurisdiction. Fed. R. App. P. 28(a)(4)(A).

The district court had subject matter jurisdiction over Plaintiff-Appellant's claims against Defendant-Appellee pursuant to 28 U.S.C. §§ 1331 and 1367(a), not 28 U.S.C. § 1332(a).

Of the claims on appeal, the district court had original jurisdiction over Plaintiff-Appellant's claim that Defendant-Appellee violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). 28 U.S.C. § 1331. The district court properly exercised supplemental jurisdiction over Plaintiff-Appellant's Tennessee state law claims that Defendant-Appellee engaged in fraud and violated T.C.A. § 50-1-102 because they are so closely related to his Title VII claim that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

## STATEMENT OF ISSUES

Defendant-Appellee agrees with Plaintiff-Appellant's third and fourth stated issues. Defendant-Appellee does not agree with Plaintiff-Appellant's first two issue statements:

> Whether the District Court erred in granting Lampo's Motion to Dismiss under FRCP 12(b)(6) as to:
>
> a. Amos' Claim of reverse religious discrimination in violation of Title VII and the Tennessee Human Rights Act;
>
> b. Amos' Claim of religious discrimination in violation of Title VII and the Tennessee Human Rights Act….

These issues are not properly before the Court. Plaintiff-Appellant did not present a claim for reverse religious discrimination under Title VII or the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA") in response to Defendant-Appellees second motion to dismiss. When Defendant-Appellee moved to dismiss Plaintiff-Appellant's Amended Complaint, we made it clear that we could not tell whether he was attempting to assert a general religious discrimination claim, a religious accommodation claim, or both, so we argued it both ways. (Memorandum of Law ("MOL") in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 909-910). On response, Plaintiff-Appellant only argued that his First Amended Complaint asserted a religious accommodation claim. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). Plaintiff-Appellant did not argue that his First Amended Complaint asserted a general

religious discrimination claim, much less a more specific reverse religious discrimination claim. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). Plaintiff-Appellant does not challenge the district court's dismissal of the religious accommodation claim in this appeal. Thus, there is no iteration of any religious discrimination claim before this Court. Defendant-Appellee asserts the following is an accurate statement of the issues before the Court that are related to the religious discrimination claim:

A. Whether Plaintiff-Appellant waived a reverse religious discrimination claim.

B. Whether Plaintiff-Appellant pled the elements of a religious discrimination claim based on his new theory of reverse religious discrimination.

**STATEMENT OF THE CASE**

On December 13, 2021, Plaintiff-Appellant filed the original complaint ("Original Complaint") against The Lampo Group, LLC ("Lampo" or "Defendant-Appellee"), and its Chief Executive Officer, Dave Ramsey. (Complaint, R. 1, Page ID # 1). The Original Complaint contained 366 numbered paragraphs and attempted to assert claims against one or both of the defendants based on the following: (1) the Tennessee Public Protection Act ("TPPA"), T.C.A. §50-1-304, (2) religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), (3) fraud, (4) negligent misrepresentation, (5) promissory estoppel, and (6) deceptive representation under T.C.A. § 50-1-102. (Complaint, R. 1, Page ID # 29-34).

Each defendant filed a motion to dismiss all of the respective claims filed against them. (Motion to Dismiss by David Ramsey, R.12, Page ID #77; Motion to Dismiss by Lampo, R. 14, Page ID #244). In response, Plaintiff-Appellant filed the First Amended Complaint, which is the operative complaint in this case ("Amended Complaint"). (Amended Complaint, R. 21, Page ID # 4903). The Amended Complaint contained all of the claims identified in the Original Complaint except for negligent misrepresentation which Plaintiff-Appellant abandoned. The Amended Complaint included, however, two (2) new theories of recovery under the THRA– one against Defendant-Appellee and one against Dave Ramsey in his individual capacity. (Amended Complaint, R. 21, Page ID # 4935-4936). The Amended

Complaint included a total of 380 numbered paragraphs, most of which were the same as the Original Complaint with the exception of the new claims under the THRA.

Each defendant filed yet another motion to dismiss the entire complaint on March 16, 2022. (Second Motion to Dismiss by Defendant David Ramsey, R. 28, Page ID # 664; Second Motion to Dismiss by Defendant-Appellee, R. 30, Page ID # 901). In its memorandum in support of its second motion to dismiss, Defendant-Appellee noted that it could not determine from the Amended Complaint if Plaintiff-Appellant was claiming religious discrimination based on a disparate treatment or a failure to accommodate. (MOL in Support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 909-910). Plaintiff-Appellant responded to the second motion to dismiss and referenced only religious accommodation as the basis for the Title VII claim. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1134).

On July 11, 2023, the district court granted the Second Motion to Dismiss filed by Dave Ramsey in its entirety. (Memorandum Opinion and Order (Ramsey), R. 110, Page ID # 2634). On December 13, 2023, the district court granted Defendant-Appellee's Second Motion to Dismiss, dismissing all claims against the company. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4367).

Plaintiff-Appellant appeals only three (3) of the seven (7) claims that the Court dismissed: 1) religious discrimination, 2) fraud and 3) deceptive representation. All claims against Dave Ramsey have been finally adjudicated and he is no longer a party to this action. Likewise, the TPPA and promissory estoppel claims against Lampo were not appealed so those decisions are final.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's order because Plaintiff-Appellant failed to state any claim under Fed. R. Civ. Pro. 12(b)(6).[1] Plaintiff-Appellant now appeals only three (3) of the seven (7) claims – religious discrimination, fraud and Tenn. Code Ann. §50-1-102 ("deceptive representation"). As for the religious discrimination claim, Plaintiff-Appellant's only theory in response to the motion to dismiss was religious accommodation. Plaintiff-Appellant does not appeal the district court's decision that he failed to state a religious accommodation claim. Thus, that is a final adjudication. Plaintiff-Appellant now asserts a new theory of liability on appeal – reverse religious discrimination. Plaintiff should have raised

---

[1] In the district court, Plaintiff-Appellant asserted other claims against Defendant-Appellee and even claims against Defendant-Appellee's Chief Executive Officer, Dave Ramsey, individually. All of those claims were also dismissed by the district court pursuant to Fed. R. Civ. Pro. 12(b)(6) and have been abandoned by Plaintiff-Appellant on appeal. Thus, the claims against Lampo for promissory estoppel and the Tennessee Public Protection Act and the claims against Dave Ramsey for fraud and religious discrimination have all been finally adjudicated.

this new theory in response to the motion to dismiss, and because he did not, he has waived it. Even if he could argue this new theory on appeal, he failed to properly plead it, and it should be dismissed like all of his other claims. As for the fraud and deceptive representation claims, Plaintiff-Appellant failed to plead that he reasonably relied on any past or current material facts that were misrepresented by Defendant-Appellee. Instead, he points to opinions or future promises (not misstatements of past or current facts) and alleges no facts to support his assertion that he reasonably relied on the statements.

## ARGUMENT[2]

This lawsuit should never have been filed. At the heart of it is an aggrieved employee who disagreed with his employer's approach to the COVID-19 pandemic. Plaintiff-Appellant thought his employer should allow everyone to work from home. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1131, 1134-1135). He claims that he expressed his disagreement with his employer's decision to bring employees back to the office. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1131). At best, he expressed a safety concern or disagreement with his employer's interpretation of CDC, state and local guidelines. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1131). But

---

[2] Defendant-Appellee agrees with Plaintiff-Appellant that the standard of review for the issues raised on appeal is de novo.

he never filed an OSHA complaint, and he dropped his TPPA claim on appeal – presumably because he could not come up with a single safety violation or law that Defendant-Appellee violated. Instead, he tries to shoehorn his grievance into a religious discrimination claim, likely because Defendant-Appellee is in the business of providing advice based on biblical principles and tenets of the Christian faith.

Plaintiff-Appellant's Amended Complaint is a classic shotgun pleading. *See, e.g., Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1319-23 (11th Cir. 2015). At *380 paragraphs*, it is the antithesis of the "short and plain statement" required by Fed. R. Civ. Pro. 8(a) "showing that the pleader is entitled to relief." Further complicating things, each count in Plaintiff-Appellant's Amended Complaint incorporates all preceding paragraphs. *See, e.g., Weiland* at 1321-22 ("the mortal sin"). Neither Defendant-Appellee, the district court, nor this Court are required to wade through 329+ paragraphs[3] to *guess* which of Plaintiff-Appellant's allegations support each of his claims. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 649-51 (6th Cir. 2021). Nor, worse, to *guess* what Plaintiff-Appellant is actually claiming. *Id*.

This case clearly illustrates the wisdom of federal pleading standards. When Defendant-Appellee moved to dismiss Plaintiff-Appellant's Amended Complaint,

---

[3] Count I of Plaintiff-Appellant's Amended Complaint—retaliatory discharge in violation of the TPPA, which he has abandoned on appeal—begins at Paragraph 330. (Amended Complaint, R. 21, Page ID # 4933).

we raised both types of Title VII religious claims – general religious discrimination and failure to accommodate. (MOL in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 909-910). We admittedly could not tell whether Plaintiff-Appellant was attempting to assert a general religious discrimination claim, religious accommodation claim, or both. (MOL in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 910). That was Plaintiff-Appellant's unequivocal cue to clarify his claims for us and the district court. *And he did*. On response, Plaintiff-Appellant argued *only* religious accommodation. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1134). Nevertheless, like Defendant-Appellee, the district court thoughtfully and methodically addressed both general religious discrimination and religious accommodation out of an abundance of caution. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4378).

Plaintiff-Appellant's pleadings have been a quixotic quest of allegations in search of claims, and the adventure continues on appeal. Plaintiff-Appellant appeals only three (3) of the seven (7) claims that the district court dismissed: religious discrimination, fraud and deceptive representation. He tries to repackage his religious-themed allegations into a new claim of reverse religious discrimination on appeal. As discussed in detail below, that is procedurally improper, notwithstanding Plaintiff-Appellant's enlistment of the U.S. Equal Employment Opportunity

16

Commission to try to give it credibility. Even if Plaintiff-Appellant originally intended to assert a claim for reverse religious discrimination against Defendant-Appellee, he unmistakenly waived that claim by failing to raise it in response to our motion to dismiss. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). As for his fraud claim, Plaintiff-Appellant cleaves to his conclusory allegations of reliance to try to save it on appeal. As for his deceptive representation claim, Plaintiff-Appellant spins a new theory for the first time on appeal. In his response to Defendant-Appellee's second motion to dismiss, he acknowledged that the analysis for common law fraud is applicable to the statutory claim of deceptive representation. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID #1144-1145). On appeal, Plaintiff-Appellant changes course and says that reliance is not a necessary element of deceptive representation after all.

## I.    Title VII/THRA –Religious Discrimination[4]

Plaintiff-Appellant's religious discrimination claim is more muddled on appeal than ever. Like a hydra, it continues to sprout new heads. On appeal, Plaintiff-Appellant only pursues reverse religious discrimination, but he never pled that in the Amended Complaint and waived it regardless by failing to address it in his response

---

[4] The THRA mirrors Title VII in all relevant respects, so this brief will only address Title VII. *See Jordan v. Matthews Nissan, Inc.,* 539 F. Supp. 3d 848, 862 (M.D. Tenn. 2021).

to Defendant-Appellee's motion to dismiss. *See, e.g., Adu-Beniako v. Reimann*, No. 21-2978, 2022 WL 4538372, at *3 (6th Cir. July 12, 2022); *Zanecki v. Health Alliance Plan of Detroit*, 577 F. App'x. 394, 399 (6th Cir. 2014); *Allstate Ins. Co. v. Global Medical Billing, Inc.*, 520 F. App'x. 409, 411-13 (6th Cir. 2013); *Berger v. Medina County Ohio Bd. Of County Com'rs*, 295 F. App'x. 42, 44-45 (6th Cir. 2008); *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022); *Lee v. Northeast Illinois Regional Commuter Railroad Corporation*, 912 F.3d 1049, 1053-54 (7th Cir. 2019); *In re Kingate Management Limited Litigation,* 746 F. App'x. 40, 43 (2d Cir. 2018). Plaintiff-Appellant abandoned his religious accommodation claim by not addressing it in his appellate brief. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). And any other manifestations of religious discrimination under Title VII are out for the same reasons—not pled in the Amended Complaint, not addressed in response to Defendant-Appellee's motion to dismiss, and/or not addressed in his appellate brief.

### A. Plaintiff-Appellant Waived Reverse Religious Discrimination Claim

Plaintiff-Appellant raises a reverse religious discrimination claim for the first time on appeal. It is the law of the Sixth Circuit that failure to respond to a claim that was raised in a dispositive motion is a waiver. *See Alexander v. Carter for Byrd*, 733 F. App'x. 256, 261 (6th Cir. 2018). Likewise, claims not raised before the district court are waived on appeal. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th

Cir. 2008). In *Alexander*, the plaintiff filed a claim of malicious prosecution, which the defendant addressed in its summary judgment motion. The plaintiff did not respond to the claim in her response to the summary judgment motion and the Court concluded that she had waived the claim.

> When a plaintiff "fails to address [a claim] in response to a motion for summary judgment," the claim is deemed waived. *Haddad v. Sec'y, U.S. Dept. of Homeland Sec.*, 610 Fed.Appx. 567, 568-69 (6th Cir. 2015) (quoting *Brown v. VHS of Mich., Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013) ). Where claims are so waived, district courts in this Circuit grant summary judgment as a matter of course. *See, e.g., Burress v. City of Franklin, Tenn.*, 809 F.Supp.2d 795, 809 (M.D. Tenn. 2011); *Dage v. Time Warner Cable*, 395 F.Supp.2d 668, 679 (S.D. Ohio 2005); *see also Jones v. Kimberly-Clark Corp.*, 238 F.3d 421, —— – ——, —— (6th Cir. 2000).

*Alexander*, 733 F. App'x. at 261.

Plaintiff-Appellant did not plead reverse religious discrimination in the Amended Complaint. But even if he had, Plaintiff-Appellant clearly waived reverse religious discrimination by not addressing it in response to Defendant-Appellee's motion to dismiss, particularly after Defendant-Appellee invited clarification of the theory or theories on which Plaintiff-Appellant relied. *See* (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136); *Flowers*, 513 F.3d at 552.

Plaintiff-Appellant has now waived or abandoned all of his religious claims against Defendant-Appellee under Title VII. By only arguing religious accommodation in response to Defendant-Appellee's motion to dismiss, Plaintiff-

19

Appellant waived any other religious claims under Title VII. And on appeal, Plaintiff-Appellant has apparently abandoned religious accommodation because it is not addressed anywhere in his brief. *See, e.g., Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x. 473, 479 FN50 (6th Cir. 2014) (appellant waives issues not raised and argued in initial brief).

As aforementioned, Defendant-Appellee gave Plaintiff-Appellant ample, unequivocal opportunity to assert that he was pursuing a reverse religious discrimination claim. In *both* motions to dismiss filed by Defendant-Appellee, we openly acknowledged that we could not tell whether Plaintiff-Appellant was trying to assert a general religious discrimination claim or religious accommodation claim, so we addressed both. (MOL in support of First Motion to Dismiss by Defendant-Appellee, R. 15, Page ID # 250-251; MOL in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 910). On response, Plaintiff-Appellant led with the elements to prove religious discrimination under an accommodation theory. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133). In fact, Plaintiff-Appellant *only* asserted a religious accommodation claim. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). He said nothing about general religious discrimination, nor certainly the more specific reverse religious discrimination theory. In fact, his entire argument was related to his own religious beliefs, an element that according to the EEOC is irrelevant in a

reverse religious discrimination claim as discussed *infra*. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136).

In Defendant-Appellee's first motion to dismiss all claims against it, Defendant-Appellee stated that there are two types of religious discrimination claims under Title VII but "it is not clear from the Complaint which of the two types of claims Plaintiff is asserting." (MOL in support of First Motion to Dismiss by Defendant-Appellee, R. 15, Page ID # 250-251). In response to Defendant-Appellee's first motion to dismiss, Plaintiff-Appellant filed his Amended Complaint, the operative complaint in this case. (Amended Complaint, R. 21, Page # 4903-4939). The religious discrimination claim under Title VII in the Amended Complaint is identical to the Title VII claim in the Original Complaint. Plaintiff-Appellant not only provided no clarification regarding his Title VII religious discrimination claim but he also made no new allegations of reverse religious discrimination or non-conformity.

In the Defendant-Appellee's motion to dismiss that is before this Court on appeal, Defendant-Appellee again stated that "[t]here are two types of religious discrimination claims available under Title VII—general religious discrimination claims and religious accommodation claims." (MOL in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 909). Again, Defendant-Appellee pointed out that "it is not clear from the Complaint which of the two types

of claims Plaintiff is asserting." (MOL in support of Second Motion to Dismiss by Defendant-Appellee, R. 31, Page ID # 910). In Plaintiff-Appellant's response to Defendant-Appellee's motion to dismiss, Plaintiff-Appellant did not dispute Defendant-Appellee's analysis that there are two (2) types of religious discrimination claims. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1136). In fact, Plaintiff-Appellant finally provided clarity on his religious discrimination claim. While out of an abundance of caution Defendant-Appellee argued against both theories – disparate treatment and failure to accommodate – Plaintiff-Appellant continued to *not* assert a reverse religious discrimination claim and clarified that the issue before the district court was a religious discrimination claim based on failure to accommodate. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1134).

To ensure that total dismissal of the Amended Complaint was appropriate, the district court addressed both arguments proffered by Defendant-Appellee, even though Plaintiff-Appellant was silent on the traditional discrimination theory altogether, including a reverse religious discrimination theory. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4378-4387). The district court took the time to review *all* of Plaintiff-Appellant's allegations that were remotely related to religion. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4378-4387).

Plaintiff-Appellant now asserts for the first time on appeal that he was actually pleading a reverse religious discrimination claim the whole time, despite his silence on the theory in response to the Motion to Dismiss. Absent some exceptional circumstance, Plaintiff-Appellant's assertion of this newfound theory is improper. "Issues raised for the first time on appeal are typically not properly before this court absent exceptional circumstances, where resolution of the issue is clear or beyond doubt, or when application of the waiver rule would produce a miscarriage of justice." *Cochran v. United Parcel Serv., Inc.*, 137 F. App'x 768, 772 (6th Cir. 2005); see also *Flowers*, 513 F.3d at 552; *Foster v. Barilow,* 6 F.3d 405, 407 (6th Cir. 1993); *Taft Broad. Co. v. United States,* 929 F.2d 240, 243–45 (6th Cir. 1991); *Pinney Dock and Transp. Co. v. Penn Central Corp.,* 838 F.2d 1445, 1461 (6th Cir. 1988).

Plaintiff-Appellant does not present any exceptional circumstances that would excuse him from his failure to raise reverse religious discrimination if he was in fact asserting such a theory. In his response to Defendant-Appellee's motion to dismiss, Plaintiff-Appellant cites and describes *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722 (6th Cir. 2009), the same case which he now cites in alleging that courts recognize a reverse discrimination claim. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1135). Plaintiff-Appellant was clearly aware that a party may bring a claim for reverse religious discrimination when he

responded to Defendant-Appellee's motion to dismiss and yet he failed to bring it before the district court in his response. Instead, he argued that his claim for religious discrimination was based on failure-to-accommodate theory and nothing else. (Plaintiff-Appellant's Response to Motion to Dismiss, R. 37, Page ID # 1133-1134).

Plaintiff-Appellant and the EEOC argue that because Defendant-Appellee did not address every possible theory of religious discrimination in its Motion to Dismiss, Plaintiff-Appellant did not waive a claim based on the reverse religious discrimination theory. In fact, they go so far to accuse the district court of failing to fully develop the silent theory when it gave Plaintiff-Appellant every benefit of the doubt and searched for something, anything that might save the claim. Defendant-Appellee's motion was to dismiss *all* claims. (Defendant-Appellee's Second Motion to Dismiss, R. 30, Page ID # 901). If Plaintiff-Appellant had *any* theories that he thought kept his claims alive, his opportunity to assert them was in response to the motion to dismiss, which was dispositive of his entire case. Defendant-Appellee admitted in both of its motions to dismiss that it was unsure what theory or theories Plaintiff-Appellant was asserting as the basis of his religious discrimination claim. The idea that courts and defendants should address every possible theory, including those that the plaintiff does not assert, is untenable. Defendants would have to argue all of the possible theories of liability and the court would then have to analyze all of them, even if plaintiffs never mention them.

24

If Plaintiff-Appellant truly believed that he raised a reverse discrimination claim in the Amended Complaint and Defendant-Appellee failed to address it in its motion to dismiss, he would surely have argued that point to the district court in response to a motion to dismiss, especially when Defendant-Appellee acknowledged that it was unclear what type of religious discrimination he was alleging. Plaintiff-Appellant unquestionably waived any reverse religious discrimination claim because he failed to present such a claim before the district court. Because Plaintiff-Appellant does not appeal the district court's decision to dismiss the religious accommodation theory, there is no religious discrimination claim on appeal to this Court.

### B. Pleading Religious Discrimination under Title VII

Even if Plaintiff-Appellant had raised a reverse discrimination claim in response to the motion to dismiss, it would have been dismissed for failure to state a claim. Title VII's commandment is simple—"It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion... or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee, because of such individual's … religion …." 42 U.S.C. § 2000e-2(a).

The definitions section of Title VII adds contour, defining "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). This is the origin of employers' duty to provide religious accommodations, which the EEOC has expounded upon in implementing regulations. *See* 29 CFR § 1605.2.

### 1. The Pleading Standard for Title VII Religious Discrimination

Plaintiff-Appellant needed to plausibly plead that Defendant-Appellee discriminated against him *because of his religion*, which, again, could include *his own* religious belief, observance, or practice. 42 U.S.C. § 2000e(j); 42 U.S.C. § 2000e-2(a); *Savel v. MetroHealth System*, 96 F.4th 932, 936 (6th Cir. 2024). But in any event, *his* religion is what mattered, not the employer's.

- Styled as a general religious discrimination claim, Plaintiff-Appellant needed to plausibly plead that he suffered an adverse employment action *because of his religion*.

- Styled as a religious accommodation claim, Plaintiff-Appellant needed to plausibly plead that *his religion* conflicted with a workplace requirement and Defendant-Appellee failed to accommodate him.

Defendant-Appellee's religion does not matter for pleading purposes.[5]

The EEOC urges the Court to adopt a more expansive interpretation of Title VII. Specifically, the EEOC argues that Title VII prohibits an employer from terminating an employee for failing to conform to the *employer's religion*, alone, without any regard for the *employee's religion*. That interpretation is not faithful to the plain text of Title VII, the purpose of Title VII, or courts' preference to avoid statutory interpretations that would be unconstitutional.

The plain text of Title VII is focused exclusively on the *employee's religion*. Both prongs under 42 U.S.C. § 2000e-2(a) expressly prohibit discrimination "because of [the employee's] religion." The statute does not contain any reference—express or implied—to the *employer's religion*.

The purpose of Title VII (for this case) is ending religious discrimination in the workplace, not eliminating religion from the workplace altogether. *See, e.g., Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 72 FN6 (1977). Title VII has

---

[5] In the Title VII context, the employer's religion would only matter for collateral reasons, e.g., if they asserted affirmative defenses to a Title VII claim under the First Amendment (U.S. Const. amend. I), or the Religious Freedom Restoration Act, 42 U.S.C. §2000bb *et seq.* ("RFRA").

nothing to say about workplace rules and decisions—secular or religiously motivated—*unless and until* they (i) discriminate against an employee because of *the employee's religion* or (ii) conflict with *the employee's religion*.[6] From a pleading standpoint at least, the employer's motivation for its offending workplace rule/decision is irrelevant. The *employee's religion* is the focal point.

The EEOC's sole focus on *employer religion* would also impermissibly distinguish between secular and religiously motivated workplace rules/decisions in violation of the First Amendment to the United States Constitution and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA").

Take the example, for instance, in which an employer prohibits employees from working on Sunday. Applying the EEOC's employer-focused rule:

- If the employer prohibits employees from working on Sunday for religious reasons, e.g., to observe the Sabbath, the employer violates Title VII by forcing its employees to conform to its religious view regarding the Sabbath.

---

[6] For example, under Title VII, the Christian owner of an employer is not prohibited *per se* from requiring all employees to wear the Christian cross as part of their work uniform. Title VII enters that scenario *only* when an employee claims that wearing the Christian cross conflicts with their religion. Then and only then, Title VII says that the employer must accommodate the employee by exempting them from that uniform requirement *unless* the employer has a viable affirmative defense, e.g., the employer can establish that the exemption would impose an undue hardship on the conduct of their business, a defense under RFRA, or a constitutional defense.

- However, if the employer prohibits employees from working on Sunday for secular reasons, e.g., to reduce the risk of having to pay overtime, the employer does not violate Title VII at all.

The EEOC's interpretation of Title VII would create completely different outcomes, for the same workplace rule, depending on whether the employer was motivated by secular or religious concerns.[7] It cannot survive the Free Exercise Clause of the First Amendment or RFRA.

Employer religion, as expressed through workplace rules/decisions, is protected by the Free Exercise Clause of the First Amendment and RFRA. Title VII is not a generally applicable statute because it contains numerous individualized exemptions, so strict scrutiny applies whenever Title VII intersects with the First Amendment. But even if Title VII was a generally applicable statute, RFRA would still compel strict scrutiny analysis, meaning government cannot substantially burden a person's exercise of religion unless it (1) furthers a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. *Id.*

---

[7] Ironically, the EEOC presented this scenario as an example of a religiously motivated workplace rule that *did not violate* Title VII without any explanation as to why. There is no way to square that position with the EEOC's assertion that Title VII categorically prohibits employers from requiring employees to conform to their religion. The EEOC is caught in its own web.

29

The EEOC's interpretation of Title VII cannot survive strict scrutiny for two reasons:

First, given its numerous individualized exemptions, Title VII does not further a compelling government interest.

Second and alternatively, even if Title VII furthered a compelling government interest, the EEOC's interpretation is not the least restrictive means of achieving it. Here, the relevant purpose of Title VII is ending religious discrimination in the workplace. The EEOC's *employer-focused* interpretation of Title VII would achieve that purpose by effectively eliminating *all* employer free exercise from the workplace, regardless of whether it detrimentally impacted any employees. Whereas the *employee-focused* interpretation of Title VII would achieve the same purpose by eliminating, at most, *only* the employer free exercise that detrimentally impacted employees. The latter approach is clearly the least restrictive and, thus, the only approach that comports with the Free Exercise Clause and RFRA. *See generally, Burwell v. Hobby Lobby*, 573 U.S. 681 (2014).

But the EEOC goes even a step further, arguing that a Title VII plaintiff-employee never has "to plead *or prove* specifically that their own beliefs were religious or that those beliefs caused the conflict…." That is utter nonsense and the EEOC, not surprisingly, cites no authority in support of it. There is no way to square the plain text of Title VII, prohibiting discrimination "*because of [the employee's]*

*religion*," with the EEOC's contention that the employee's religion is irrelevant. To state a religious discrimination claim under Title VII, the plaintiff-employee must plausibly plead their religion and the conflict or other reasons why they believe their employer discriminated against them because of it. Otherwise, religious discrimination under Title VII would have no limiting principle and become a runaway train.[8]

Applying the EEOC's interpretation, a plaintiff-employee could state (and apparently prove) a claim for religious discrimination even if they refused to conform to their employer's religiously motivated rules for purely secular reasons or no reason at all. Or, worse, even if they secretly shared their employer's underlying religious convictions. For Title VII, the employee's actual beliefs and how they conflicted with a workplace requirement or motivated their employer's decision are fundamental requirements.[9] The EEOC would have the Court transform Title VII into a strict liability statute for any employer that makes religiously motivated decisions, regardless of their actual impact on employees' religion.

---

[8] The district court addressed this at-length in the context of a claim like Plaintiff-Appellant's being considered valid even though it is not grounded in his religion. (Memorandum and Opinion (Lampo), R. 136, Page ID # 4379-4380).

[9] Incidentally, that is why courts have consistently refused to apply a "regarded as" theory of liability to Title VII.

While the EEOC invites the Court to "join its sister circuits" by expanding the scope of religious discrimination under Title VII, the cases it cites from other circuits are all distinguishable. Most address religious discrimination or harassment claims at summary judgment in the context of modifying the *McDonnell Douglas* evidentiary framework that is inapplicable at the pleading stage. But none of the cases support the EEOC's sweeping position.

- Third Circuit

From the Third Circuit, the EEOC cited *Prowel v. Wise Bus. Forms, Inc.* in which the court affirmed summary judgment against the plaintiff-employee's religious harassment claim. 579 F.3d 285 (3d Cir. 2009). However, the EEOC misread *Prowel* because it rejects their position. While the Third Circuit acknowledged that "Title VII seeks to protect employees…from forced religious conformity", the court nevertheless affirmed summary judgment against the plaintiff-employee because he was harassed (if at all) based on sexual orientation not religion. *Id*. at 292-93. The Third Circuit refused to equate the plaintiff-employee's sexual orientation with his religious beliefs, and absent evidence of a *conflicting religious belief*, the mere fact that the employee's conduct did not

conform to his employer's religious beliefs regarding homosexuality failed to establish a claim under Title VII.[10]

- Fifth Circuit

From the Fifth Circuit, the EEOC cited *Young v. Southwestern Savings and Loan Association*, in which the court reversed a bench trial verdict entered against the plaintiff-employee's religious harassment claim. 509 F.2d 140 (5th Cir. 1975). In addition to being a religious harassment case that had reached a bench trial, *Young* said nothing about the pleading standard for religious non-conformity claims and repeatedly emphasized the conflict between the plaintiff-employee's religion (atheism) and the defendant-employer's religion (Christianity).

- Eighth Circuit

From the Eighth Circuit, the EEOC cited *Campos v. City of Blue Springs, Missouri,* in which the court affirmed a jury verdict in favor of the plaintiff-

---

[10] *Prowel* is distinguishable in other ways, e.g., it affirmed a summary judgment decision not dismissal, the Third Circuit referenced "forced religious nonconformity" in the course of discussing the *McDonnell Douglas* prima facie factors that do not apply at the pleading stage, it involved a religious harassment claim whereas this case involves a disparate treatment claim, and for the statement regarding "forced religious nonconformity" the court relied on two apparent miscites. *Harris v. Forklift Sys., Inc.* has nothing to do with religion or conformity. 510 U.S. 17 (1993). *Abramson v. William Paterson College of New Jersey* involved religious harassment, but harassment based on the *employee's religion*, and said nothing about the *employer's religion* or conformity with it. 260 F.3d 265 (3d Cir. 2001).

employee's religious harassment claim. 289 F.3d 546 (8th Cir. 2002). In addition to being a religious harassment case that had reached a jury verdict, *Campos* said nothing about the pleading standard for religious non-conformity claims and repeatedly emphasized the conflict between the plaintiff-employee's religion (Native American spirituality) and the defendant-employer's religion (Christianity).

- Ninth Circuit

From the Ninth Circuit, the EEOC cited *Noyes v. Kelly Services,* in which the court reversed summary judgment against the plaintiff-employee's religious discrimination claim. 488 F.3d 1163 (9th Cir. 2007). While *Noyes* referenced religious nonconformity in the context of discussing the *McDonnell Douglas* prima facie factors, those factors have no bearing at the pleading stage. *Noyes* said nothing about the pleading standard for a religious nonconformity claim, and repeatedly stated that the plaintiff-employee did not belong to the same particular religious sect as her manager.

### 2. Plaintiff-Appellant Failed to Plausibly Plead Religious Discrimination

According to Plaintiff-Appellant and apparently the EEOC, the pleadings in this case now include one theory of religious discrimination: disparate treatment rooted in the EEOC's unsupported version of reverse discrimination. It is important to note that the Amended Complaint has not changed since Plaintiff-Appellant argued religious accommodation exclusively in response to the motion to dismiss.

34

Instead, Plaintiff-Appellant and now the EEOC glean yet a wholly separate theory of liability from the exact same muddled allegations in hopes of finding something, anything that sticks.

Plaintiff-Appellant's pleadings, at best, fail to plausibly plead the elements necessary to meet the basic pleading standard and even worse, contain allegations (or rather admissions) that destroy this newfound theory. The district court diligently dissected the entire complaint and put it back together, giving more deference to Plaintiff-Appellant than required. Still, the district court concluded there was no iteration of the Amended Complaint, including those that Defendant-Appellee speculated for sake of argument, that stated a plausible claim for religious discrimination.

This Court has stated that "'[a] pleading that states a claim for relief must contain,' among other things, 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Kensu v. Corizon, Inc.*, 5 F.4th 646, 649 (6th Cir. 2021) (quoting Fed. R. Civ. P. 8(a), (a)(2)). Rule 8 requires that each allegation in the complaint be "simple, concise, and direct." Kensu, 5 F.4th at 649; Fed. R. Civ. P. 8(d)(1). Further, the district court, in its Memorandum Opinion, correctly stated the standard to survive a motion to dismiss:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), cited in *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018).

(Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4372-4373).

The pleading standard is not complicated. It does not require 380 paragraphs of allegations. But it does require that the claims be stated clearly and concisely. "The district court and defendants should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue." *Kensu*, 5 F.4th at 651.

Allegations must also plausibly give rise to the claim asserted. As the district court noted in its decision below, without more than conclusory allegations of discrimination, it was "constrained to say that it is not objectively plausible that a belief in the propriety of particular government and doctor-suggested precautions regarding COVID is religious rather than entirely secular – *i.e.* political, scientific, medical, social, sociological, philosophical, pragmatic, ethical, secular-moral, etc. – in nature." (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4386). In reaching this conclusion, the district court relied on *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-CV-00886-JRA, 2023 WL 2691718 at *4 (N.D. Ohio Mar. 29,

2023), in which the court dismissed claims of religious discrimination in violation of Title VII, which was purportedly based on the plaintiff's termination from employment because she refused to administer COVID vaccinations.

> Courts have "differentiated between those whose views were religious in nature and those whose views were 'essentially political, sociological, or philosophical,' stating, 'no court should inquire into the validity or plausibility of the beliefs; instead, the task of a court is "to decide whether the beliefs professed by a registrant are sincerely held and whether they are in the [the believer's] own scheme of things, religious."'" *Fallon v. Mercy Catholic Med. Ctr.*, 877 F.3d 487, 490-91 (3d Cir. 2017) See also, *Mason v. Gen. Brown Cent. Sch. Dist.*, 851 F.2d 47, 51 (2d Cir. 1988) (upholding as not clearly erroneous a district court finding that certain parents' opposition to vaccination was "based, not on religious grounds, but on scientific and secular theories"); *Hanzel v. Arter*, 625 F. Supp. 1259, 1260, 1265 (S.D. Ohio 1985) (describing a professed belief in "chiropractic ethics"—"a body of thought which teaches that injection of foreign substances into the body is of no benefit and can only be harmful"—as philosophical rather than religious); *McCartney v. Austin*, 31 A.D.2d 370, 298 N.Y.S.2d 26, 27 (N.Y. App. Div. 1969) ("[A]ppellants' opposition [to vaccination]— whether or not predicated upon their personal moral scruples or upon medical concern—is not upon religious grounds....").

*Lawhead*, 2023 WL 2691718 at *4. It is as plausible, if not more plausible, that Plaintiff-Appellant's dissatisfaction with his employer's response to COVID-19 was motivated by secular concerns rather than sincerely held religious beliefs.

Plaintiff-Appellant alleges that Defendant-Appellee failed to mention his reverse religious discrimination claim in its motion to dismiss "despite [Plaintiff-Appellant] clearly making this claim in his complaint." In support of his contention that he "clearly" made a reverse religious discrimination claim, Plaintiff-Appellant

points to the conclusory allegation that Defendant-Appellee demoted and then terminated him for refusing to comply with Defendant-Appellee's directions on COVID-19. He also points to a separate conclusory allegation that Defendant-Appellee terminated him for his nonadherence to Defendant-Appellee's religious convictions. These are nearly identical to the conclusory allegations in *Lawhead* that were insufficient to plausibly plead religious discrimination.

While Plaintiff-Appellant can reverse engineer his 380-paragraph complaint to say most anything, "it is not the duty of the court [or Defendant] to create a claim that [Plaintiff] has not spelled out in his pleading" *DiPasquale v. Hawkins*, 748 F. App'x 688, 694 (6th Cir. 2018). Plaintiff-Appellant had the opportunity in the complaint, the amended complaint, and in his response to Defendant-Appellee's motion to dismiss to assert or at the very least, clarify that he was asserting a claim for reverse religious discrimination. Plaintiff-Appellant's singular focus on religious accommodation in response to the motion to dismiss is effectively an admission that he failed to state a claim of reverse religious discrimination in the Amended Complaint.

By Plaintiff-Appellant's own admission, he failed to meet this basic standard as neither Defendant-Appellee, nor the district court, nor even Plaintiff-Appellant himself knew that the operative complaint included allegations of reverse religious

discrimination. Because Plaintiff-Appellant failed to plead reverse religious discrimination, it is not properly before the Court on appeal.

## II.    Fraud

The district court dismissed the Plaintiff-Appellant's fraud claim because he failed to state his claim with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.[11] (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4388-4392). Fundamentally, Plaintiff-Appellant's claim was based on opinions or future promises about at-will employment rather than facts, let alone material facts. The district court concluded that Plaintiff-Appellant plead nothing more than conclusory allegations of reasonable reliance on various opinions about the work environment or the promises about the future of his at-will employment. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4389-4392). The district court correctly found these allegations insufficient to establish fraud. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4392). In this appeal,

---

[11] Fraud consists of six elements: (1) a representation made of an existing or present fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made knowingly or recklessly without regard for its truth; (5) Plaintiff reasonably relied upon the misrepresent material fact; and (6) Plaintiff suffered damage as a result of the misrepresentation. *See PNC Multifamily Capital Institutional Fund XXVI LP v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 548 (Tenn. Ct. App. 2012).

Plaintiff-Appellant challenges the district court's decision that Plaintiff-Appellant failed to establish the element of reasonable reliance.

There are six (6) alleged statements in the Amended Complaint on which Plaintiff-Appellant bases his fraud claim[12]:

- Statement No. 1: "Plaintiff would edit features and help create their new film department."

- Statement No. 2: "[Lampo] was [sic] not 'cult like' in the way they operated."

- Statement No. 3: "[Lampo] operated a 'drama free' workplace."

- Statement No. 4: "Lampo had been voted 'best place to work' for over 10 years in a row by their own employees without interference from management."

- Statement No. 5: "[Lampo] was family friendly and would allow Plaintiff to spend time with his family without interference from Defendants."

- Statement No. 6: Plaintiff could work from home without adverse employment action.

(Amended Complaint, R. 21, Page ID # 4936-4937).

---

[12] Incidentally, in the First Amended Complaint, these statements formed the basis of Plaintiff-Appellant's promissory estoppel claim against Defendant-Appellant and fraud claim against Mr. Ramsey individually. (Amended Complaint, R. 21, Page ID # 4936-4937). Curiously, Plaintiff-Appellant did not appeal the district court's dismissal of those claims.

None of the statements Plaintiff-Appellant points to in his Amended Complaint could have possibly induced reasonable reliance – more importantly, Plaintiff-Appellant fails to plead how or why he relied on them. Statements No. 1 and No. 6 are future promises related to his at-will employment. Statements No. 2, No. 3, No. 4[13] and No. 5 are subjective opinions – not past or existing material facts.

The element of reasonable reliance must meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure. The district court stated precisely what the heightened pleading standard entails:

> Rule 9(b)…requires a plaintiff to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff's complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.
>
> *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 524-25 (6th Cir. 2023) (internal citations and quotation marks omitted).
>
> And, although not made crystal clear by the language just quoted, when Fed. R. Civ. P. 9(b) applies to a claim, "that rule requires that she plead

---

[13] Plaintiff-Appellant attributed this statement to Lampo's CEO, Dave Ramsey, who Plaintiff-Appellant named as a defendant. (Amended Complaint, R. 21, Page ID # 4907). In dismissing Dave Ramsey as an individual defendant, the district court concluded that this statement, which was allegedly made by Mr. Ramsey during an episode of his nationally syndicated radio show, could not serve as the basis of a fraud claim because Plaintiff-Appellant failed to allege it was false or that Mr. Ramsey made it knowing it was false. Plaintiff-Appellant did not appeal the decision to dismiss Mr. Ramsey as an individual defendant nor does he argue in this appeal that Statement No. 4 was false. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4392).

the circumstances of her fraud and misrepresentations with particularity." *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 852 (6th Cir. 2006). This means that "[c]onclusory statements of reliance are not sufficient to explain with particularity how she detrimentally relied on the alleged fraud [.]" *See id.* at 852-53 (citing *Smith v. Mitlof,* 198 F.Supp.2d 492, 504–05 (S.D.N.Y. 2002) (holding that the complaint's allegation that the plaintiffs reasonably relied on the fraudulent representations was insufficient to meet the heightened pleading requirements of Rule 9(b)).

(Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4389).

The district court in pain-staking detail examined all 380 allegations in the Complaint to determine if there was any sufficient allegation of reasonable reliance. The district court correctly decided that Plaintiff-Appellant made only conclusory statements about reliance on the six statements to take the job. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4389-4390). In Paragraph 52, Plaintiff-Appellant simply states that he "relied" on the "assurances" from Defendant-Appellee when accepting the job. (Amended Complaint, R. 21, Page ID # 4908). In Paragraph 359, he adds that he "reasonably relied" with no explanation as to why it was "reasonable." (Amended Complaint, R. 21, Page ID # 4937). And In Paragraph 366, he claims he suffered injury as a result of the reliance. (Amended Complaint, R. 21, Page ID #4937).

As the district court noted, these conclusory allegations of reliance are insufficient and do not suffice to plead reliance with particularity as required under Rule 9(b). *See Evans*, 434 F.3d 852-53; (Memorandum Opinion and Order (Lampo),

R. 136, Page ID # 4390). Making every inference in favor of Plaintiff-Appellant, he (1) identifies statements that are at best, opinions or future promises about his at-will employment, and (2) asserts that he relied on the statements in deciding to take employment with Defendant-Appellee. But conclusions without factual allegations fall short of the particularity standard in Rule 9. Plaintiff-Appellant did not and could not connect the dots between the alleged statements and his conclusory allegations of reliance. Even now, he cannot point to a single allegation in the Amended Complaint that contains *facts* showing how the allegedly false statements changed his decision to move to Nashville or persuaded him to leave California, particularly when he admits in his allegations that he had heard differing opinions about the workplace environment. Instead, he continues to make conclusory statements to this Court, claiming now that surely he must have relied on the opinions of others or he would not have taken a pay cut or moved to Tennessee. If Plaintiff had simply stated a fact (not an opinion or future promise) that he alleged was false and then plead how he relied on it to his detriment, it would have saved Defendant-Appellee and the district court a significant amount of time in trying to unearth a claim from the 380 allegations in the Amended Complaint.

Plaintiff-Appellant asserted a claim for estoppel based on the same statements and the premise that he reasonably relied on them. (Amended Complaint, R. 21, Page ID # 4937-4938). The district court dismissed the promissory estoppel claim and

Plaintiff-Appellant has not appealed it. The district court's reasoning for dismissing the claim, however, is instructive in this appeal of the fraud claim. Both claims must be pled with particularly under Rule 9(b) of the Federal Rules of Civil Procedure and reasonable reliance is a crucial element in each of them. In dismissing the promissory estoppel claim, the district court opined that statements that a workplace is "not cult-like," "drama free," and "family friendly" are not promises but statements of opinions. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4394). Even if construed as a promise, the district court noted that they are at the very least "highly subjective, ambiguous and vague" and not "enforceable promises." (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4394). The district court went on to say that "spending time with family without interference from [Lampo]" cannot possibly state a claim for promissory estoppel because reasonable minds would differ as to what constitutes sufficient time with family and what level of interference is tolerable. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4394). In dismissing the promissory estoppel claim, the district court correctly concluded that Plaintiff-Appellant had failed to plead reasonable reliance on any of the six statements. (Memorandum Opinion and Order (Lampo), R. 136, Page ID # 4396). The Amended Complaint is devoid of any allegation that even hints at how Plaintiff-Appellant relied on the statements of opinion to his detriment. And even if his conclusory allegations that he relied on the statements

somehow satisfied Rule 9(b), he cannot possibly claim that it was reasonable to rely on the opinions of others (some of which differed) or future promises related to his at-will employment to move from California to Nashville to work for Defendant-Appellee.

## III.    T.C.A. § 50-1-102 – Deceptive Representation

The statute at issue, Tenn. Code Ann. § 50-1-102 makes it:

> [U]nlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement.

Tenn. Code Ann. § 50-1-102(a)(1); *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 408 (Tenn. Ct. App. 2007).

Courts have not opined on the specific elements one must plead to establish a claim under this relatively obscure statute. However, the Tennessee Court of Appeals has characterized Tenn. Code Ann. § 50-1-102 as functionally equivalent to fraudulent inducement, *i.e.,* an employer fraudulently inducing an employee to quit his/her current job and come work for them. *Shipp v. Ditch Witch Equip. of Tennessee, Inc.*, No. M200502354COAR3CV, 2007 WL 700979, at *2 (Tenn. Ct. App. Mar. 7, 2007). To establish a claim for fraudulent inducement under Tennessee

45

law, a plaintiff must show reasonable reliance. *See Lamb v. MegaFlight, Inc.*, 26 S.W.3d 627, 630-31 (Tenn. Ct. App. 2000). Thus, it stands to reason that in order to prove a claim under Tenn. Code Ann. § 50-1-102, Plaintiff-Appellant had to plead reasonable reliance with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

Plaintiff-Appellant cites *Risher v. Cherokee Buick-Pontiac-Oldsmobile-GMC Truck, LLC*, No. E2002-1644-COA-R3-CV, 2003 WL 21755055, at *6 (Tenn. Ct. App. July 28, 2003) for the proposition that he is not required to plead reasonable reliance to state a claim for deceptive representation under Tenn. Code. Ann. § 50-1-102. However, Plaintiff-Appellant's reliance on this case is misplaced. In *Risher*, a jury returned a verdict in favor of the plaintiff, including for violation of Tenn. Code Ann. § 50-1-102, and the defendants appealed. 2003 WL 21755055, at *1. This case did not address any elements of the statutory claim or whether plaintiff met the pleading standard. The only issue before the court regarding Tenn. Code Ann. § 50-1-102 was "whether there was material evidence to support the jury's verdict that Defendants violated Tenn. Code Ann. § 50-1-102." *Risher*, 2003 WL 21755055, at *6. The court makes no reference at all to the pleading standard, including whether reasonable reliance is necessary.

Plaintiff-Appellant cites the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-109 alleging that it allows aggrieved individuals to bring

suit for "deceptive practices" just like Tenn. Code Ann. § 50-1-102 allows individuals to bring claims for "deceptive representations." Plaintiff-Appellant alleges that there is no requirement for reasonable reliance on the deceptive conduct claim under the TCPA so the same should be true for Tenn. Code Ann § 50-1-102. However, the two statutes and their respective claims are materially different.

Under the TCPA, an individual may bring an action to recover actual damages "as a result of the use or employment by another of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part…" Tenn. Code Ann. § 47-18-109(a)(1). The TCPA includes a list of unfair or deceptive acts and practices that an individual cannot engage in without facing liability. Tenn. Code Ann. § § 47-18-104(b). Therefore, a plaintiff bringing a claim under the TCPA only has to prove that the defendant engaged in one of those listed unfair or deceptive practices or acts and that the defendant's practice or act caused damages. *See Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). Unlike the TCPA, Tenn. Code Ann. § 50-1-102 does not contain a list of representations that, if a plaintiff proved were made by a defendant, would constitute a violation of the statute.

The only aspect of these statutes that is similar is that both are subject to the heightened pleading standard under Rule 9(b) because the statutes are similar to common law fraud. Regarding the TCPA, the Sixth Circuit has held that:

> Because allegations of fraud must be pleaded with specificity, *see, e.g.,* Fed.R.Civ.P. 9(b), because that requirement applies to allegations of unfair and deceptive acts under § 47-18-109, *see Harvey v. Ford Motor Credit Co.,* 8 S.W.3d 274, 275 (Tenn.Ct.App.1999).

*Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446, at *5 (6th Cir. Aug. 17, 2005). As statutory fraud, Tenn. Code Ann. § 50-1-102 claims are equivalent to fraud in the inducement and are subject to the same heightened pleading standards limitations as common law fraud claims. *See Shipp*, 2007 WL 700979, at *2.

Plaintiff-Appellant claims that the heightened pleading standard and the requirement to plead reasonable reliance are beyond the statutory language and thus inappropriate. Plaintiff-Appellant states the following:

> As explained by the Tennessee Supreme Court, "[i]n construing statutes, this Court's role is 'to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.,* 90 S.W.3d 676, 678 (Tenn. 2002) (quoting *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is derived from the plain and ordinary meaning of the statutory language unless the statute is ambiguous." *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (citing *State v. Blackstock,* 19 S.W.3d 200, 210 (Tenn. 2000); *Owens,* 908 S.W.2d at 926)). A court's search for a statute's purpose begins with its language, *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn. 1986).

(Plaintiff-Appellant's Appeal Brief Page 41).[14] This statute is clearly ambiguous. There is little case law on this statute and what little exists addresses facts that are obvious. For example, in *Risher*, the employer agreed to pay the employee $75,000 a year, plus 10% commissions on net profits. 2003 WL 21755055 at *7. However, once the employee began employment, the employer paid him only $29,000 per year and $3,000 in bonuses. *Id*. The representation made in *Risher* was a specific, measurable dollar amount, so reasonable reliance and pleading standards did not arise. The other cases citing the statute have only addressed it to conclude that it does not apply if the plaintiff is never actually employed by the defendant. *See Gilinsky v. Marcus & Millichap Real Est. Inv. Servs. of Seattle, Inc.*, No. 3:20-CV-00261, 2021 WL 2897300, at *15 (M.D. Tenn. July 9, 2021); *Brewer v. United Wisconsin Insurance Co.*, 972 F. Supp. 2d 1044 (M.D. Tenn. 2013). The district court correctly interpreted the ambiguous statute based on its plain language and the

---

[14] This entire quote from Plaintiff-Appellant's brief is actually an exact quote from *In re Newman*, No. 3:16-BK-33533-SHB, 2017 WL 2589318, at *5 (Bankr. E.D. Tenn. June 14, 2017) though not credited as such. In *Newman*, a creditor was seeking rental payments from a debtor's wife who was not on the lease. The creditor alleged that he was owed rental payments from the wife pursuant to the Tennessee Uniform Residential Landlord Tenant Act ("TURLTA") and Tennessee common law. The Court examined the legislative intent and determined that TURLTA superseded any common law that directly conflicted with its provisions and requirements. *Id*. The Court only interpreted the statute to determine whether it superseded the common law.

cases that have addressed it, specifically *Shipp*, which characterized the statutes as functionally equivalent to fraudulent inducement. 2007 WL 700979, at *2.

Here, Plaintiff-Appellant bases his claim under T.C.A. §50-1-102 on alleged misrepresentations but does not plead what the actual misrepresentations were. (Amended Complaint, R. 21, Page ID # 4939). Plaintiff-Appellant simply recites the elements under the statute in paragraphs 374 through 379 of the Amended Complaint. (Amended Complaint, R. 21, Page ID # 4939). Additionally, Plaintiff-Appellant acknowledged in the Amended Complaint that some reliance is required under the statute. (Amended Complaint, R. 21, Page ID # 4939). Now in his appeal, he claims that reasonable reliance is *not* necessary to plead a claim under T.C.A. §50-1-102. Perhaps Plaintiff-Appellant recognizes that his failure to plead reasonable reliance is fatal to his fraud claim just as it was to his promissory estoppel claim. The only way to keep his T.C.A. §50-1-102 claim alive is to reverse course and assert that reasonable reliance is not an element. But all the authority, however scant, is exactly opposite of Plaintiff-Appellant's conclusion. Thus, in the absence of pleading reasonable reliance with particularity, no claim can exist under T.C.A. §50-1-102.

## CONCLUSION

The district court correctly held that Plaintiff-Appellant failed to state a claim upon which relief may be granted on any of the claims that have been appealed to this Court. Accordingly, the district court's order granting Lampo's motion to dismiss should be affirmed.

Respectfully submitted,

/s/ Leslie Goff Sanders

Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and 6 Cir. R. 32(a), the undersigned

certifies that this brief complies with the type-volume limitations of Fed. R. App.

P. 32(a)(7). Excluding the items listed in 6 Cir. R. 32(b)(1), this brief contains

10,035 words.

/s/Leslie Goff Sanders
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

# CERTIFICATE OF SERVICE

I hereby certify that, on April 12, 2024, I filed the foregoing document via the Court's electronic filing system, which will automatically notify and send a copy of the filing to:

Jonathan Street
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group

*Attorneys for Plaintiff-Appellant*

/s/Leslie Goff Sanders
Leslie Goff Sanders
*Attorney for Defendant-Appellee*

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry Number | Description | Page Numbers |
|---|---|---|
| 1 | Original Complaint | Page ID # 1-58 |
| 12 | Motion to Dismiss by Dave Ramsey | Page ID # 77-78 |
| 14 | Motion to Dismiss by Defendant-Appellee | Page ID #244-245 |
| 15 | Memorandum of Law in Support of Motion to Dismiss by Defendant-Appellee | Page ID # 246-489 |
| 21 | First Amended Complaint | Page ID #4903-566* |
| 28 | Second Motion to Dismiss by Dave Ramsey | Page ID # 664-665 |
| 30 | Second Motion to Dismiss by Defendant-Appellee | Page ID # 901-903 |
| 31 | Memorandum of Law in Support of Second Motion to Dismiss by Defendant-Appellee | Page ID # 904-1090 |
| 37 | Response to Defendant-Appellee's  Second Motion to Dismiss | Page ID # 1129-1358 |
| 110 | Memorandum Opinion and Order (dismissing all claims against Dave Ramsey) | Page ID # 2634-2647 |
| 136 | Memorandum Opinion and Order (dismissing all claims against Defendant-Appellee) | Page ID # 4367-4399 |