**No. 24-5011**

---

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**BRAD AMOS**
*Plaintiff/Appellant*

v.

**THE LAMPO GROUP, LLC**
*Defendant/Appellee*

---

On appeal from the United States District Court
for the Middle District of Tennessee at Nashville
Case No. 3:21-CV-00923

---

**REPLY BRIEF OF
PLAINTIFF/APPELLANT BRAD AMOS**

---

Jonathan Street
Lauren Irwin
Emily Costanzo
The Employment & Commerce Law Group
1720 West End Ave, Suite 402
Nashville, TN 37203
(615) 850-0632
street@eclaw.com
lauren@eclaw.com
emily@eclaw.com

Attorneys for Plaintiff/Appellant

# Table of Contents

ARGUMENT ..........................................................................................5

I.    Defendant did not Oppose Plaintiff's Claim that the Court Dismissed his
Reverse Religious Discrimination Claim Sua Sponte ...........................................5

II.   Plaintiff has not Waived his Reverse Religious Discrimination Claim .........6

III.   Plaintiff has not Abandoned his Religious Accommodation Claim..........13

IV.   Fraud .........................................................................................17

V.   Statutory Fraud..............................................................................21

   a.   Plaintiff has Clearly Identified Misrepresentations Made by Defendant ..21

   b.   The Statute does not Require a Showing of Reasonable Reliance and
Plaintiff has Established Reasonable Reliance.................................................22

CONCLUSION .....................................................................................25

## CASES

*Alexander v. Carter for Byrd,* 733 F. App'x. 256, 261 (6th Cir. 2018) ...................6

*Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010 ..........................22

*Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708 (6th Cir. 1985).........................9

*Campos v. City of Blue Springs, Missouri*, 289 F.3d 546, 551 (8th Cir. 2002) ........8

*Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 904–05 (6th Cir. 2020) ..............5

*Davis v. McGuigan*, 325 S.W.3d 149, 155 (Tenn. 2010).......................................18

*Fulmer v. Follis*, No. W201702469COAR3CV, 2018 WL 6721248, at *5 (Tenn.
   Ct. App. Dec. 20, 2018) .....................................................................................19

*Gateway Communs., Inc. v. Silicon Valley Fin. Servs.*, 2002 Bankr. LEXIS 1740 17

*Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000)..................22

*Heyward v. Cooper*, 88 F.4th 648, 655 (6th Cir. 2023) ...........................................5

*Jackson v. Longistics Transp., Inc*., No. 11-2093 STA, 2012 WL 1252543, at *9–
   10 (W.D. Tenn. Apr. 13, 2012)..........................................................................16

*Noyes v. Kelly Servs.*, 488 F.3d 1163, 1172 (9th Cir. 2007)...................................9

*Pitz v Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *7 (Tenn.
   Ct. App. Dec. 17, 2004) .....................................................................................19

*Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009) .......................8

*Reed v. Mohr*, No. 2:19-CV-738, 2019 WL 5157005, at *4 (S.D. Ohio Oct. 15,
   2019) ..................................................................................................................14

*Shipp v. Ditch Witch Equip. of Tennessee, Inc*., 2007 WL 700979, at *2 (Tenn. Ct.
   App. Mar. 7, 2007)..............................................................................................23

*State ex rel. Slatery v. HRC Med. Centers, Inc*., 603 S.W.3d 1, 21 (Tenn. Ct. App.
   2019) ..................................................................................................................24

*State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022)............................................23

*Thaddeus–X v. Blatter*, 175 F.3d 378, 403 at n. 18 (6th Cir.1999) .........................5

*Tucker v. Sierra Builders,* 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005) ...............24

*United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999) ..........................................5

*Wu v. Tyson Foods, Inc.*, 189 Fed. Appx. 375, 381, 2006 WL 1716709, at *6 (6th
   Cir. 2006) ................................................................................................................14

*Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) ......................8

## STATUTES

*General Conf. Corp. v. McGill*, 617 F.3d 402 (6th Cir. 2010) ................................16

Religious Freedom Restoration Act ........................................................................16

Tenn. Code Ann. § 50-1-102 .............................................................................21, 22

Tennessee Consumer Protection Act ......................................................................24

Tennessee Human Rights Act ................................................................................14

Title VII of the Civil Rights Act ...........................................................................14

## RULES

Fed. R. App. P. 32(a)(7)(B) ....................................................................................26

**ARGUMENT**

**I.    Defendant did not Oppose Plaintiff's Claim that the Court Dismissed his Reverse Religious Discrimination Claim S*ua Sponte***

Defendant failed to address Plaintiff's claim that the Court dismissed Plaintiff's claim for "reverse religious discrimination" *sua sponte*. (MTD Lampo Memorandum Opinion and Order ("MTD Lampo Order"), R. 136, Page ID # 4378-4387). Defendant now waives the argument by failing to brief it. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 403 at n. 18 (6th Cir.1999) (en banc); *United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999). If the district court rules on the merits of a defendants' motion to dismiss based on a plaintiff's allegations in his complaint, and plaintiff's complaint was sufficient to provide defendants with the requisite notice of all of the claims he presents on appeal; then waiver of the claim on appeal is

inappropriate. *Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 904–05 (6th Cir. 2020). In the present case, the defendant was on notice of the contents of the complaint and of the district court's basis for dismissing it, so the plaintiff may properly challenge the basis of the court's decision. *Heyward v. Cooper*, 88 F.4th 648, 655 (6th Cir. 2023).

The Defendant even quotes the District Court's decision where it addressed Plaintiff's reverse religious discrimination claim. (Defendant Brief Page 22). As such, Defendant should be estopped from arguing the District Court did not rule on the merits of Plaintiff's claim *sua sponte* and waiver is not appropriate.

## II.    Plaintiff has not Waived his Reverse Religious Discrimination Claim

Defendant relies on *Alexander* to argue Plaintiff waived his claim for reverse religious discrimination stating:

> "It is the law of the Sixth Circuit that failure to respond to a claim that was raised in a dispositive motion is a waiver." *See Alexander v. Carter for Byrd,* 733 F. App'x. 256, 261 (6th Cir. 2018). (Defendant Brief Page 18-19).

However, this case is clearly distinguishable. In *Alexander,* the defendant filed for summary judgment addressing all claims brought by the plaintiff. In response, the plaintiff did not respond to the portion of defendants motion for summary judgment addressing malicious prosecution. The Court stated:

> "Here, ___**Deputy Byrd's Motion for Summary Judgment addressed Alexander's malicious prosecution claim**___, arguing that Alexander did not suffer a constitutional deprivation of liberty apart from her initial

seizure. In her response, ***Alexander failed to respond to Deputy Byrd's argument*** regarding Alexander's malicious prosecution claim, or otherwise to address that claim." *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018)(emphasis added).

The clear difference in the present case is that Defendant's Motion to Dismiss did not address Plaintiff's claim for reverse religious discrimination; whereas in *Alexander*, they addressed a claim and plaintiff failed to respond to the argument.

Defendant incredulously states in its brief:

Plaintiff and the EEOC argue that because Defendant did not address every possible theory of religious discrimination in its Motion to Dismiss, Plaintiff did not waive a claim based on the reverse religious discrimination theory. In fact, they go so far to accuse the district court of failing to fully develop the silent theory when it gave Plaintiff every benefit of the doubt and searched for something, anything that might save the claim. (Defendant Brief Page 24).

Even if Defendant did not recognize the clearly stated claim for reverse religious discrimination, and as a result failed to address it in their Motion to Dismiss, the District Court did recognize the claim. The Court clearly addressed Plaintiff's reverse religious discrimination claim in its decision.

Defendant incorrectly stated in their Motion to Dismiss "there are only two types of religious discrimination." (Defendant's Second Motion to Dismiss, R. 31, Page ID # 909). Defendant seems to argue Plaintiff should try and respond to arguments Defendant could have made in its motion but failed to do so. This inappropriately shifts the burden on a Motion to Dismiss to the Plaintiff.

According to Defendant, it would be able to file a Motion to Dismiss that just says the complaint should be dismissed in its entirety without making any legal argument; then Plaintiff would be required to come up with every possible theory Defendant could have for dismissing the complaint and respond to each of these previously unidentified arguments. Then if the court were to dismiss the claims based on some theory not identified by Plaintiff, he will have waived an argument against Defendant even if it didn't raise it.

Further, the Plaintiff never accused the District Court of failing to address his claim for reverse religious discrimination. In fact, as stated previously, the Court actually did address the claim in its Order and it is that Order that is appealed here. Defendant is well aware of this, it cited the portion of the Court's Order dismissing Plaintiff's claim for reverse religious discrimination several times in its brief; yet it still wastes this Court's time arguing the claim was waived.

The Defendant attempts to challenge the case law used by the EEOC in its brief; however, this is misleading on their part. The cases identified by Defendant actually state the following:

- Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 292 (3d Cir. 2009)

- Forcing an employee to attend religious staff meetings may create an atmosphere of religious intimidation which would state a cause of action under Title VII. *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975).

- We agree with the district court that Campos presented sufficient evidence to allow the jury to find that she was forced to quit because she was not a Christian. *Campos v. City of Blue Springs, Missouri*, 289 F.3d 546, 551 (8th Cir. 2002).

- The district court also substituted its own judgment that the evidence—repeated favoritism of a more junior, less qualified Fellowship-member employee over a more senior, more qualified non-Fellowship member—did not support an inference of discrimination on the basis of Noyes' non-affiliation with the Fellowship. To do so was error. Noyes v. Kelly Servs., 488 F.3d 1163, 1172 (9th Cir. 2007).

- This is the essence of discrimination. Woodward was willing to give special consideration to those persons who shared his religious views, but, when Blalock's religious views changed, Woodward no longer gave Blalock this special consideration. *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 708 (6th Cir. 1985).

In its amicus brief, the EEOC states for religious nonconformity claims[1], "the focus is not on "some identifiable characteristic of the plaintiff", [but] instead, "it is the religious beliefs of the employer, and the fact that [the plaintiff] does not share them, that constitute the basis of the claim."" (EEOC Amicus Curiae Brief Page 17, internal citations removed). Defendant, in typical fashion, claims this is "utter nonsense." (EEOC Amicus Curiae Brief Page 17; Defendant Brief Page 30). Yet, the EEOC in its brief stated, "[w]e are unaware of any circuit court that has held that Title VII does not prohibit discrimination based on religious nonconformity." (EEOC Amicus Curiae Brief Page 13, Footnote 4).

---

[1] The EEOC uses the terminology "religious nonconformity claim" in reference to Plaintiff's reverse religious discrimination claim in their amicus curiae brief.

Defendant uses an example of a company not being open on Sunday for religious reasons rather than be willing to pay overtime as an example as to why the law in every other circuit is wrong. (Defendant Brief Page 28-29). However, as the EEOC pointed out in its amicus brief, that would be a "neutral application of a religiously grounded rule." (EEOC Amicus Curiae Brief Page 18). The situation explained by Defendant does not require employees to conform to or abandon a religious belief.

Policies, for example, which state employees may not have unmarried sex because scripture deems it a sin, or have a non-traditional marriage because the employer believes it to be a sin, or take precautions besides prayer to combat disease, are non-employment related policies designed to force employees to conform to the religious beliefs of their employer. As such, they are discriminatory under Title VII and the Tennessee Human Rights Act.

The Plaintiff in this matter claims in his Complaint the following:

- Ramsey is avowedly and publicly Christian, and Lampo repeatedly sought to make its employees conform with Ramsey's particular religious beliefs. (Amended Complaint, R. 21, Page ID #4904, 4907, 4912, 4915, ¶¶ 11, 38, 96, 136, 139).

- Employees had to attend meetings designed to ensure they adhered to Mr. Ramsey's personal religious beliefs. (Amended Complaint, R. 21, Page ID #4912, ¶ 96).

- Ramsey directed Lampo to impose his beliefs upon employees by demoting or terminating those who did not agree with his spiritual or religious beliefs. (First Amended Complaint, R. 21, Page ID #4915, ¶ 139).

- Lampo compelled religious conformity with even more vigor after the COVID-19 pandemic began. (First Amended Complaint, R. 21, Page ID #4915, 4917, ¶¶ 135-137, 153-154).

- Specifically, Lampo officials expected employees to adopt Mr. Ramsey's view that taking COVID-19 precautions demonstrated "weakness of spirit" and that prayer was the only preventative measure necessary (Amended Complaint, R. 21, Page ID #4915, ¶ 135-138).

- Lampo removed Mr. Amos from his primary project after he failed to conform to these religious beliefs; (First Amended Complaint, R. 21, Page ID #4923, ¶ 217-219, 221-222).

- From that point up until his termination, Lampo required Mr. Amos to attend additional meetings in order to have him submit to the personal religious views of Ramsey, and; (Amended Complaint, R. 21, Page ID # 4911, 4923-4924).

- Mr. Amos was finally terminated for failing to conform to Defendant's religious beliefs. (Amended Complaint, R. 21, Page ID #4934, ¶ 342).

- Despite the alarming spread of this highly infectious virus, Mr. Ramsey and other leadership at Lampo spoke against other actors taking preventative COVID-19 measures. (Amended Complaint, R. 21, Page ID # 4914).

- Despite the growing public concern for safety and need to exercise COVID-19 precautions, Mr. Ramsey and other leadership continued to express their belief that these measures were not aligned with the religious principles held by Lampo or Ramsey. (*Id.*).

- In fact, Mr. Ramsey and other Lampo leadership actively denigrated any opposing religious beliefs that supported taking preventative measures. (Amended Complaint, R. 21, Page ID # 4915).

- Mr. Ramsey believed taking preventative measures were against the will of God. (*Id.*)

- Mr. Ramsey aided, abetted, compelled, commanded, and/or directed Lampo to impose his beliefs by terminating or demoting employees who did not agree with his spiritual beliefs or held religious beliefs in contravention of his own. (*Id.*).

- Plaintiff did not share Defendants' beliefs that taking actions to protect his family demonstrated "weakness of spirit". (Amended Complaint, R. 21, Page ID # 4916).

- Mr. LeFevre dismissed Plaintiff's concerns, informing him that Lampo's current response was sufficient, and that Plaintiff needed to simply "pray and keep moving forward." (Amended Complaint, R. 21, Page ID # 4917).

- Lampo expected its employees to adopt the religious view of Mr. Ramsey that taking COVID-19 precautions demonstrated "weakness of spirit" and prayer was the proper way to avoid COVID-19 infection. (*Id.*)

Defendant's claim that neither the Defendant, the Court, nor the Plaintiff even knew he made a reverse religious claim is ludicrous. Plaintiff set it out in plain language, the District Court recognized it, and ruled on it in its Order. The only person who claims ignorance to the claim is the Defendant.

Further, Defendant knew Plaintiff made a claim for reverse religious. Lampo stated in its Motion to Dismiss:

"Plaintiff's religious discrimination claim is summarized in Paragraph 345 of the Complaint: "Lampo's termination of Plaintiff was motivated

by his refusal to adhere to Lampo's particular religious views and abandon his own on COVID…." (Defendant's Second Motion to Dismiss, R. 31, Page ID # 911).

This sentence states clearly what Plaintiff, the EEOC, and every circuit who has addressed the issue state makes up a valid religious non-conformation claim. Defendant admits Plaintiff has made such a non-conformity claim, it just thinks the current law is "utter nonsense" and therefore it should not be required to follow the law.[23]

Further, Defendant was well aware of Plaintiff's reverse religious discrimination claim as the Complaint stated it in the preceding state court Complaint arising from the same nucleus of facts. In that complaint Amos clearly states Lampo terminated him solely because he refused to adhere to Lampo's particular religious views on COVID and therefore suffered "reverse religious discrimination". The words "reverse religious discrimination" did not appear in the federal court Complaint but the facts underlying the Complaint were unchanged. And the Plaintiff also explained how the facts alleged fit into the framework of a "reverse religious discrimination claim."

### III.    Plaintiff has not Abandoned his Religious Accommodation Claim

---

[2] Defendant also claims in their brief Plaintiff's "enlisted" the U.S. Equal Employment Opportunity Commission to try to give his argument credibility. This is the thing in Defendant's brief which is "utter nonsense." Plaintiff did not know the EEOC was going to file an Amicus Brief prior to receiving notice from the court's electronic filing system.
[3] Previous Complaint states "reverse religious discrimination"

In its Statement of Issues, Defendant alleges Plaintiff did not challenge the District Court's dismissal of the religious accommodation claim in this appeal. (Defendant Brief Page 10). Defendant goes on to repeatedly reiterate that Plaintiff has abandoned religious accommodation. (Defendant Brief Page 10, 13, 20, 25). While the Sixth Circuit holds that arguments not raised in a party's opening brief are waived, that is certainly not the case here. *Wu v. Tyson Foods, Inc.*, 189 Fed. Appx. 375, 381, 2006 WL 1716709, at *6 (6th Cir. 2006). Plaintiff raised failure to accommodate in his opening brief and maintains this claim on appeal.

Defendant alleges Plaintiff has not been clear as to what theory or theories he asserts as the basis of his religious discrimination claim. (Defendant Brief Page 24). Notably, Plaintiff disputes that he *must* clarify what theories he asserts for Defendant.[4] Plaintiff has clearly asserted in his Complaint, Response in Opposition to Lampo's Motion to Dismiss, and now in his Opening Brief, facts supporting religious discrimination in general. Regardless, Plaintiff distinguishes on appeal what theories he maintains as stated in his Statement of Issues:

    a. Amos' Claim of reverse religious discrimination in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act;

    b. Amos' Claim of religious discrimination in violation of Title VII of the Civil Rights Act and the Tennessee Human Rights Act. (Plaintiff Brief Page 9-10).

---

[4] In Reed v. Mohr, the court held the plaintiff was not required to plead legal theories or to specify what provision of the law the defendants allegedly violated. *Reed v. Mohr*, No. 2:19-CV-738, 2019 WL 5157005, at *4 (S.D. Ohio Oct. 15, 2019).

As such, Defendant's argument must fail. Plaintiff's Statement of Issues distinguishes reverse religious discrimination from religious discrimination, placing Defendant on notice of both theories being pursued on appeal. Applying Defendant's own argument, even if Plaintiff only raised religious accommodation in his response in opposition to Lampo's motion to dismiss, which he does not concede, then issue statement (b) clearly describes a claim for religious accommodation.

Furthermore, Plaintiff clearly identifies this claim in his Opening Brief. Specifically, Plaintiff stated:

- Despite LeFevre and Lampo's awareness Amos's religious beliefs required him to protect his family's health and safety, his concerns were dismissed. Amos was told he needed to simply, "Pray and move forward." (Plaintiff Brief Page 18).

- Amos was assured that his job would not be jeopardized by working from home. However, after Amos agreed to this arrangement, Lampo demoted him for the duration of his remote work. (Plaintiff Brief Page 19).

- Amos's religious beliefs required him to heed the advice of science to protect his family from a deadly disease. Amos felt so strongly about this belief that he brought it to the attention to his supervisor in order to seek alternatives to complying with Lampo's contrary religious position. (Plaintiff Brief Page 26).

- The First Amended Complaint also alleges that Lampo would not allow any employees to continue to work from home under any circumstances and actively denigrated religious beliefs that included taking preventative safety measures. Rather, Lampo instructed Amos to "pray and keep moving forward. The First Amended Complaint then alleges that as a result of his religious convictions Amos confronted his supervisor publicly about his concerns with Lampo's response to

COVID-19 and espoused alternatives which would align more closely with Amos's religious beliefs. (Plaintiff Brief Pages 34-35).

- The law does not require Amos to explicitly reference his religion in each and every conversation with Lampo in order to state a claim. "While the law does not require that a[n] employer divine the existence of a conflict or discern whether an accommodation is desired, there is no magic incantation required to put an employer on notice either. It would be contrary to the purpose of the statute to permit a[n] employer to close his eyes to that which is obvious in favor of a rule requiring particular verbiage to trigger constitutional protection." *Jackson v. Longistics Transp., Inc*., No. 11-2093 STA, 2012 WL 1252543, at *9–10 (W.D. Tenn. Apr. 13, 2012) (internal citations omitted). (Plaintiff Brief Page 36).

- As stated above, Amos pled specifically a "devotion to maintaining the health, safety, and wellbeing of his children and wife" and "a respectful treatment for the safety of others and his community" and to "do no harm to others. That practice necessarily includes taking the necessary precautions to prevent the spread of a potentially deadly disease. However, Lampo required *all employees* to be present, in person, at work, which would require Amos to act contrarily to his religious beliefs. As a result of Amos refusing to act contrarily to his religious beliefs and voicing his opposition to Lampo's alleged requirements, Lampo terminated Amos. (Plaintiff Brief Page 37). [5]

Plaintiff clearly argued a failure to accommodate claim in his Opening Brief.

Defendant raises the Religious Freedom Restoration Act for the first time in its brief, however, it is inapplicable to the current proceeding. The 6th Circuit has already decided that the RFRA is inapplicable in an action between private parties. *General Conf. Corp. v. McGill*, 617 F.3d 402 (6th Cir. 2010) ("Read in conjunction

---

[5] This also could state a claim of retaliation under Title VII as well. As Defendant stated in their brief "It is not complicated. Plaintiff's pleadings, taken as true and construed in a light most favorable to him, either state a claim against Defendant upon which relief can be granted or they do not."

with the rest of the statute, the provision simply requires courts to apply RFRA "to all Federal law" in any lawsuit to which the government is a party."). The government is not a party in this dispute, and therefore the RFRA is irrelevant.

## IV.  Fraud

Defendant insists that Plaintiff has only alleged statements that amount to mere opinions or future promises, and that Plaintiff has done nothing to show reasonable reliance beyond making conclusory statements of such. (Defendant Brief Page 39). However, Plaintiff could not have spelled out his reasonable reliance more clearly.

### a.  Defendant's False Statements

A representation of fact can be distinguished from opinion when it appears that the matter referred to is within the range of definite knowledge and does not necessarily rest on belief and conjecture. *Gateway Communs., Inc. v. Silicon Valley Fin. Servs.*, 2002 Bankr. LEXIS 1740. The Lampo officials gave multiple false statements in an effort to quell Plaintiff's worries. Specifically, Plaintiff was told by officials that:

- Lampo is not "cult-like" (Amended Complaint, R. 21, Page ID # 4907-4908, 4931, 4936).

- Lampo is a nontraditional work environment because of their strong commitment to family time for employees, and therefore they would accommodate Mr. Amos's request for unimpeded family time (Amended Complaint, R. 21, Page ID # 4906-4907, 4937).

- Lampo has been voted "best place to work" for over 10 years in a row by their own employees without any interference from management (Amended Complaint, R. 21, Page ID # 4907-4908, 4933, 4936).

- Lampo operates a "drama free" work environment, and (Amended Complaint, R. 21, Page ID # 4908, 4930, 4936).

- Lampo intended on making Mr. Amos a lead editor for a student debt documentary (Amended Complaint, R. 21, Page ID # 4905).

Each of the above statements are clearly a statement based on past fact, as it purely concerns the results and context of votes that had already occurred. No fair reading of these statements could possibly lead to the conclusion that they were merely opinion or conjecture by the official who gave the statements. Defendant's claim to the contrary is not grounded in any reasonable interpretation of the statements.

The statements were made to Plaintiff as fact to assure him that the terms of his employment were satisfactory. Wherever a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, then the statement clearly becomes an affirmation of fact within the meaning of the general rule, and may be a fraudulent misrepresentation. *Davis v. McGuigan*, 325 S.W.3d 149, 155 (Tenn. 2010).

Defendant made these statements to Plaintiff to persuade him that Lampo was not "cult like" and a place he would want to work. As shown by Plaintiff's lengthy

investigation into Lampo, the work environment and work he would be performing were material to his decision to accept employment with Defendant. Defendant clearly recognized this, and in its attempt to recruit Plaintiff, gave these statements not as opinions of Lampo's work environment or Plaintiff's role in the company, but rather as affirmative statements that Lampo would honor his commitment to family, assign him a specific role on a specific project, and provide the sort of work environment he was in search of. Defendant not only failed to deliver on these assurances, but knew at the time of deliverance that they were false. Defendant was aware that Plaintiff's acceptance of the job depended on a satisfactory answer to his misgivings, and affirmatively gave false statements in order to induce his acceptance.

      b. <u>Reasonable Reliance</u>

Reasonable reliance is a question of fact. *Fulmer v. Follis*, No. W201702469COAR3CV, 2018 WL 6721248, at *5 (Tenn. Ct. App. Dec. 20, 2018) (quoting *Pitz v Woodruff*, No. M2003-01849-COA-R3-CV, 2004 WL 2951979, at *7 (Tenn. Ct. App. Dec. 17, 2004)). To determine whether a plaintiff reasonably relied on a statement, courts consider the following factors:

> (1) the plaintiff's business expertise and sophistication; (2) the existence of a longstanding business or personal relationship between the parties; (3) the availability of the relevant information; (4) the existence of a fiduciary relationship; (5) the concealment of the fraud; (6) the opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the misrepresentation.

*Fulmer v. Follis*, No. W201702469COAR3CV, 2018     WL 6721248, at *5 (Tenn. Ct. App. Dec. 20, 2018).

As discussed at length in Plaintiff's Opening Brief, application of the factors above establishes reasonable reliance for the Plaintiff. Plaintiff was considering a monumental career change that would result in taking a substantial pay cut and uprooting his family and the life he had built in California. (First Amended Complaint, R. 21, Page ID # 4908; 4937 (Plaintiff Brief Page 47)). Before deciding to move across the country and work for Defendant, Plaintiff performed his due diligence by conducting research into Lampo and its work environment. (First Amended Complaint, R. 21, Page ID # 4907 (Plaintiff Brief Page 13). Upon discovering troubling reviews detailing a "cult-like" work environment at Lampo, Plaintiff sought to confirm or disprove the reviews through the only avenue available; the highest officials at Lampo. (First Amended Complaint, R. 21, Page ID # 4906-4907 (Plaintiff Brief Page 13-14). No outsider would be able to confirm or disprove the reviews, so Plaintiff naturally spoke with the interviewers and Lampo officials as they were the only inside source of information available to him.

As evidenced by his extensive research and inquiry into Lampo's work environment, Plaintiff was greatly concerned by the negative reviews of Lampo and its work environment. He only made the decision to accept the position and make the move after having his fears dispelled by the false statements from Lampo's highest officials. Plaintiff had no available alternatives or opportunities to uncover

the truth of the statements given by Lampo's officials, as Lampo's employees are the only people with actual knowledge of the work environment within the company. This reliance was to his detriment, as Plaintiff indeed took the substantial pay cut and moved because Lampo's false statements convinced him that Lampo was not "cult-like".

These facts show that Plaintiff performed a diligent search into Lampo's work environment and that he only made the decision to accept employment with Lampo after Lampo's officials made false statements to ease those concerns.

## V.    Statutory Fraud

### a.    Plaintiff has Clearly Identified Misrepresentations Made by Defendant

Defendant argues Plaintiff does not identify what misrepresentations were made in regards to his claim for deceptive representations and false pretenses under Tenn. Code Ann. § 50-1-102. Again, Defendant blatantly disregards Plaintiff's Opening Brief and makes repeated misrepresentations of the arguments therein.

In his brief, Plaintiff classified the misrepresentations stating, "The representations made to Amos by Lampo concerned the kind and character of the work to be done, the amount and character of compensation to be paid for the work, and the sanitary or other conditions of the employment." (Plaintiff Brief Page 39). Plaintiff goes on to specifically provide what misrepresentations were made as follows:

- Amos, after seeing reviews and local commentary that Lampo was "cult-like," inquired to the validity to DiCicco and Anderson, who denied the rumors outright. DiCicco and Anderson went on to assure Amos that the work environment would not impede his time with his family. Id. Lampo further assured Amos that he would make "quick and significant" advances within his job, receive salary increases, and help create a new film department. (Plaintiff Brief Page 39).

- Amos inquired about the specific promises Lampo made to him during his hiring, like "many opportunities for quick and significant advancements and salary increases based on his work performance." Johnson told Amos that a salary increase or job promotion would never happen. (Plaintiff Brief Pages 39-40).

- Lampo also mislead as to the conditions of Amos' employment as to whether the conditions would be "cult-like." (Plaintiff Brief Page 40).

  b. <u>The Statute does not Require a Showing of Reasonable Reliance and Plaintiff has Established Reasonable Reliance</u>

Defendant further suggests Plaintiff must plead reasonable reliance with particularity to maintain a claim under T.C.A. § 50-1-102. Plaintiff maintains that this is not the case. Regardless, Plaintiff-Appellee did in fact plead reasonable reliance with particularity as detailed in the section above.

Tenn. Code Ann. § 50-1-102 does not contemplate "reasonable reliance" a single time in the statutory text. T.C.A. § 50-1-102. It has been well established that courts "endeavor to read statutes ... with an eye to their straightforward and commonsense meanings." *Bates v. Dura Auto. Sys., Inc.*, 625 F.3d 283, 285 (6th Cir. 2010) (quoting *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 910 (6th Cir. 2000)) (internal quotations omitted). As such, Plaintiff is only required under the statute to establish that Defendant "induce[d], influence[d], persuade[d] or

engage[d] [him] to change from one place to another in this state . . . through or by means of false or deceptive representations." T.C.A. § 50-1-102.

When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we "enforce the statute as written. *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022). The statute in question is not ambiguous:

> "It is unlawful for any person to induce, influence, persuade or engage workers to change from one place to another in this state, or to bring workers of any class or calling into this state to work in any type of labor in this state through or by means of false or deceptive representations, false advertising or false pretenses, concerning the kind and character of the work to be done, or the amount and character of compensation to be paid for the work, or the sanitary or other conditions of the employment, or as to the existence or nonexistence of a strike or other trouble pending between employer and employees, at the time of or prior to the engagement."

The case of *Shipp v. Ditch Witch Equip. of Tennessee, Inc*., 2007 WL 700979, at *2 (Tenn. Ct. App. Mar. 7, 2007) which Defendant attempts to rely on to show that to state a claim under the statute; the elements of fraudulent inducement must be shown. This case in no way stands for this proposition. The Plaintiff in *Shipp* had his claim under the statute dismissed because he did not identify any evidence showing he was fraudulently induced to leave his former employment. It does not discuss what type of representation would be required to state a claim under the statute. It certainly does not mention "reasonable reliance" as an element that must

be proven to have a claim under the statute. Defendant attempts to place requirements not contained in the unambiguous statute itself.

The statute also allows for "deceptive" representations as well as "false" representations. The concept of deceptiveness is a broader, more flexible standard of actionable merchant misconduct than the traditional remedy of common-law fraud. A deceptive act or practice is one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact. *Tucker v. Sierra Builders,* 180 S.W.3d 109, 116 (Tenn. Ct. App. 2005). Although the Tucker court was addressing a claim under the Tennessee Consumer Protection Act; the language of deceptive conduct in both statutes is the same.

Further, an advertisement is deceptive and "[t]he law is violated if the first contact or interview is secured by deception ... even though the true facts are made known to the buyer before he enters into the contract of purchase." *State ex rel. Slatery v. HRC Med. Centers, Inc*., 603 S.W.3d 1, 21 (Tenn. Ct. App. 2019). The statements made by Defendant to convince Plaintiff to move to Tennessee for a  job with Defendant could certainly be considered "false advertising". That is a question for a jury to determine in this matter.

The fact that the statute does not require "fraudulent" conduct to trigger its protections is support that reasonable reliance is not an element which must be proved.

## CONCLUSION

For the reasons set forth above, Plaintiff, Brad Amos, respectfully asks this honorable court to overturn the District Court's final judgment. (Final Judgement, R. 138, Page ID # 4401).

Respectfully submitted,

**THE EMPLOYMENT & COMMERCE LAW GROUP,**

/s/ *Jonathan A. Street*
**JONATHAN STREET, BPR No. 021712**
**LAUREN IRWIN, BPR No. 034833**
**EMILY COSTANZO, BPR No. 041447**
Attorneys for Plaintiff
1720 West End Ave, Suite 402
Nashville, TN  37203
(615) 850-0632

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2024 a copy of the foregoing was filed electronically. Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may gain access to this filing through the Court's electronic filing system.

/s/ *Jonathan Street*

**APPELLANT'S DESIGNATION OF THE RELEVANT DISTRICT
COURT DOCUMENTS**

| Description of Entry | Record Entry No. | Page ID # Range |
|---|---|---|
| Amended Complaint | R. 21 | 4904, 4907, 4912, 4915, 4917, 4923 4937 |
| Defendant's Second Motion to Dismiss | R. 31 | 909 |
| MTD Lampo Order | R. 136 | 4378-4387 |
| Final Judgment | R. 138 | 4401 |