CASE NO. 24-5011

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

BRAD AMOS,

*Plaintiff-Appellant,*

-v.-

THE LAMPO GROUP, LLC,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middle District of Tennessee

**PETITION FOR REHEARING EN BANC**

Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

## TABLE OF CONTENTS

| | |
|---|---|
| Table of Authorities | 2 |
| Rule 35(b) Statement | 3 |
| Introduction | 4 |
| Reasons for Granting En Banc Review | 5 |
| Conclusion | 16 |

## TABLE OF AUTHORITIES

| **Cases** | |
|---|---|
| *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981) | 4, 11 |
| *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) | 9 |
| *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26 (Tenn. 1996) | 5 |
| *Carpenter v. Wilkinson,* 946 F. Supp. 522 (N.D. Ohio 1996) | 15 |
| *Cutter v. Wilkinson,* 349 F.3d 257 (6th Cir. 2003) | 14 |
| *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pennsylvania*, 877 F.3d 487 (3rd Cir. 2017) | 4, 11, 12 |
| *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) | 9 |
| *Jones v. First Kentucky Nat'l Corp.*, 1986 WL 398289 (6th Cir. July 17, 1986) | 12 |
| *Lawhead v. Brookwood Management Co., LLC*, 2023 WL 2691718 (N.D. Ohio March 29, 2023) | 14 |
| *Lucky v. Landmark Medical of Michigan, P.C.,* 2023 WL 7095085 (E.D. Mich. Oct. 26, 2023) | 15 |
| *Lucky v. Landmark Medical of Michigan, P.C.,* 103 F.4th 1241(6th Cir. 2024) | 15 |
| *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.2d 722 (6th Cir. 2009) | 3, 7, 8, 15 |
| *Prida v. Option Care Enterprises, Inc.*, 2023 WL 7003402 (N.D. Ohio Oct. 24, 2023) | 14 |
| *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033 (10th Cir. 1993) | 7 |
| *Sturgill v. American Red Cross*, 2023 WL 8701293 (E.D. Mich. Dec. 15, 2023) | 14 |

| | |
|---|---:|
| *United States v. Seeger*, 380 U.S. 163 (1965) | 4, 11, 12 |
| **Federal Statutes and Rules** | |
| U.S. Constitution, Amendment 1 | 3, 9 |
| Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* | passim |
| Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* | passim |

## RULE 35(b) STATEMENT

En banc review is necessary because the panel's formulation of a "religious non-conformity" claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII") directly conflicts with the statutory text of Title VII, directly conflicts with the Court's published decision in *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.2d 722 (2009), and violates the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.* ("RFRA") and Free Exercise Clause.

En banc review should also be granted because this case involves a question of exceptional importance—the standard for pleading a religious belief or practice for Title VII purposes. Lampo asks the full Court to adopt and apply a test akin to that employed by the district court below and others in this circuit grounded in the Supreme Court's decision in *United States v. Seeger*, 380 U.S. 163 (1965), and the Third Circuit's decisions in *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pennsylvania*, 877 F.3d 487 (3rd Cir. 2017) and *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981).

## INTRODUCTION

This is an employment case. Amos is a former employee of Lampo. On December 13, 2021, Amos sued Lampo and its Founder and CEO Dave Ramsey in the U.S. District Court for the Middle District of Tennessee for religious discrimination under Title VII and the Tennessee Human Rights Act, T.C.A. § 4-21-101 *et seq.* ("THRA"), retaliatory discharge under the Tennessee Public Protection Act, T.C.A. § 50-1-304, fraud, negligent misrepresentation, promissory estoppel, and violations of T.C.A. § 50-1-102.

On July 11, 2023, the district court dismissed all of Amos' claims against Mr. Ramsey pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Amos did not appeal that order, so none of those claims are before the Court.

On December 13, 2023, the district court also dismissed all of Amos' claims against Lampo pursuant to Rule 12(b)(6). Amos appealed the district court's dismissal of his Title VII, THRA, fraud, and T.C.A. § 50-1-102 claims against Lampo.

On August 6, 2024, a panel of this Court affirmed the district court's dismissal of Amos' fraud and T.C.A. § 50-1-102 claims but reversed its dismissal of Amos' Title VII and THRA claims.

Lampo now petitions the Court to grant en banc review of the panel's decision[1] reversing the district court's dismissal of Amos' Title VII and THRA claims.[2]

## REASONS FOR GRANTING EN BANC REVIEW

The Court should grant en banc review because (1) the panel has improperly expanded Title VII's prohibition against religious discrimination by recognizing a religious non-conformity claim that focuses solely on the employer's religious beliefs and (2) this case presents an opportunity for the full Court to adopt a more rigid test for pleading a belief or practice that is "religious" for Title VII purposes. We address each below, in turn.

### I.    Religious Non-Conformity

The Court should grant en banc review to correct the panel's formulation of "religious non-conformity" claims under Title VII. The panel has improperly expanded Title VII's prohibition against religious discrimination by recognizing a religious non-conformity claim that focuses solely on the employer's religious

---

[1] The panel's decision has been filed as Doc. #32-2. However, in compliance with 6 Cir. R. 35(a), Lampo has also attached a copy of the panel's decision to this petition.

[2] THRA claims mirror Title VII claims, so the Court's disposition of Amos' Title VII claims against Lampo will simultaneously resolve his THRA claims. *See, e.g., Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

beliefs. Under the panel's formulation, a plaintiff can state a claim for religious discrimination under Title VII by simply alleging that they suffered an adverse employment action for failing to conform to their employer's religious beliefs. (Doc. #32-2 at p. 4). That is neither faithful to the text of Title VII nor the precedent of this Court.

The panel's formulation is not supported by the text of Title VII, which does not consider—much less focus on—the religious beliefs of employers. Title VII expressly prohibits an employer from discriminating against an employee because of *the employee's religion*. 42 U.S.C. § 2000e-2(a). There is no reference or even allusion to employer religious beliefs anywhere in Title VII.[3]

The panel acknowledged this textual limitation in a footnote, but their solution is confusing and only further compounds the problem:

> While the text of Title VII prescribes that the discrimination must have been "because of such [employee's] . . . religion," *see* 42 U.S.C. § 2000e-2(a)(1), (2), it is appropriate to use the employee's refusal to share or comply with the employer's religious belief of [sic] religious work requirement ***as a proxy for the employee's religion and to show the causal nexus*** between the discriminatory act and its religious motivation. *See Shapolia*, 992 F.2d at 1038.

---

[3] The nearest example is the categorical exemption of certain religious employers from all of Title VII in 42 U.S.C. § 2000e-1(a) which has no bearing on this appeal.

(Doc. #32-2 at p. 5 FN2) (emphasis added). That is a giant leap, not supported by the *Shapolia* case to which the panel cites[4], and directly contrary to the Court's published decision in *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.2d 722 (2009) (discussed *infra*).

A court cannot reasonably infer that an employee has experienced religious discrimination in violation of Title VII (i.e., the existence of a conflicting sincerely held religious belief *plus* causation) simply because the employee alleges that they refused to share or comply with their employer's religious belief or religious work requirement. Employees may refuse for reasons that are purely secular. For example, assume that an employer requires all employees to wear a Christian cross pendant as part of their uniform for religious reasons. If a non-Christian employee refuses to wear the pendant for secular reasons (e.g., he does not like pendants, the style, or the color) and suffers an adverse employment action, the panel's formulation would allow that employee to state a claim for religious discrimination under Title VII even though his actions and their consequences had *nothing* to do with *his* sincerely held religious beliefs.

---

[4] In *Shapolia*, the Tenth Circuit addressed the prima facie factors applicable to summary judgment in a religious discrimination case where the employee claimed to have experienced discrimination because he was non-Mormon. 992 F.2d 1033, 1038 (10th Cir. 1993). As the panel noted, prima facie factors have no bearing at the pleading stage. (Doc. #32-2 at pp. 7 FN 3, 9). Nor is it readily apparent how this section of *Shapolia* supports the panel's contention anyway.

7

The panel's formulation also directly conflicts with the Court's published decision in *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722 (2009). That case arose after an employer (Kentucky Baptist Homes for Children) terminated a lesbian employee (Pedreira) "because her admitted homosexual lifestyle [was] contrary to Kentucky Baptist Homes for Children core values." *Id.* at 725. The Court affirmed dismissal of the employee's religious discrimination claim because she did not plausibly allege that her employer's prohibition against employing homosexuals conflicted with *her* sincerely held religious beliefs. *Id.* at 728. *Pedreira* teaches that it is ultimately irrelevant whether an employer's work requirement is religiously motivated. All that matters is whether that work requirement (religious or not) conflicts with *the employee's* sincerely held religious beliefs.

Moreover, turning back to the panel's footnote for a moment, the Court in *Pedreira* refused to make assumptions about the employee's sincerely held religious beliefs based on her failure to comply with her employer's religious work requirement. *Id*. The employee's sexual orientation was not a "proxy" for her sincerely held religious beliefs regarding homosexuality. Likewise, here, the personal actions that Amos took to combat COVID-19 are not a "proxy" for his sincerely held religious beliefs either.

The panel's formulation also violates RFRA and the Free Exercise Clause by treating religious work requirements more harshly than secular work requirements. Using this case as an example, the panel asserts that Amos can state a religious non-conformity claim under Title VII simply because Lampo's COVID-19 policies were allegedly motivated by religion. The panel's focus on employer religion makes all religious work requirements potentially actionable, whereas secular work requirements are only potentially actionable if they conflict with employees' sincerely held religious beliefs. RFRA applies to privately held entities like Lampo. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 719 (2014). So does the Free Exercise Clause. *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1133-36 (10th Cir. 2013). And under RFRA and the Free Exercise Clause, the panel's formulation cannot stand because it is not the least restrictive means of eradicating religious discrimination. 42 U.S.C. § 2000bb-1(b)(2). The least restrictive means is to focus on *the employee's religion* and those work requirements (religious or not) that conflict with it.

While "religious non-conformity" is a useful way to refer to a fact pattern wherein the employee fails to share or comply with their employer's religious beliefs or religious work requirements, it is not a distinct claim under Title VII separate from general religious discrimination and religious accommodation claims. All religious discrimination claims under Title VII—whether general

9

religious discrimination or failure to accommodate—start and end with *the employee's* sincerely held religious beliefs. The Court should grant en banc review to correct this aspect of the panel's decision.

## II.     A More Rigid Test for "Religious" Belief and Practice Protected under Title VII

The Court should also grant en banc review to establish a more rigid test for religious belief and practice protected under Title VII. As this case illustrates and the district court discussed, courts' hesitance to police the meaning of "religion" (especially at the pleading stage) will continue to inspire a line of cases that are increasingly attenuated from any commonsense understanding of religion. (R. 136, PageID #4379-4380). Here, Amos insists that he followed scientifically prescribed COVID-19 precautions based on the "Golden Rule", i.e., "treat others as you would want to be treated." (Doc. #32-2 at p. 9). However, as the district court warned, the "Golden Rule" and similar ubiquitous concepts can transform virtually any kind of workplace issue into a religious discrimination claim:

> Absent such limitation, for example, if an employee is an adherent of a religion that (like most religions, evidently) generally promotes caring, decency, etc., and the employee believes that caring and decency requires a particular course of conduct in connection with the employee's employment, a religious-discrimination claim would lie whenever the employer requires a different course of conduct. The potential applications of this are innumerable. To take just one example, imagine a salesperson of widgets whose religion (like many) insists on

> care for the poor. Imagine further that the salesperson concludes that application of this principle requires a major price discount for purchasers the salesperson perceives to be "poor," whereas the employer insists that everyone (rich, poor, or otherwise) pay the same sales price for the widgets. Absent the limitation the Court has recognized above, the salesperson could claim religious discrimination upon termination for refusing to charge perceived poor persons the employer's full mandated sales price. In the view of the undersigned, this would be entirely untenable and does a disservice to the spirit of laws (like Title VII and the THRA) that serve to prohibit and combat real religious discrimination.

(R. 136, PageID #4380). "Religion" is a statutory term subject to interpretation by courts—now unbridled from *Chevron* deference—and should be meaningfully defined.

The district court looked to the Supreme Court's decision in *United States v. Seeger*, 380 U.S. 163 (1965), and the Third Circuit's decisions in *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pennsylvania*, 877 F.3d 487 (3rd Cir. 2017), and *Africa v. Commonwealth of Pennsylvania*, 662 F.2d 1025 (3rd Cir. 1981). (R. 136, PageID #4382-4387).

*Seeger* described "religion" as "[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by . . . God." 380 U.S. 163, 176. While *Seeger* addressed the meaning of "religion" in the context of conscientious objection to military service, it provides a useful *and constitutional* framework for delineating between beliefs and practices that are religious in nature and those that are "essentially political, sociological, or

philosophical." *Id.* at 165. Moreover, this Court has previously used *Seeger* as a guidepost for Title VII. *See, e.g., Jones v. First Kentucky Nat'l Corp.*, 1986 WL 398289 at *3 (6th Cir. July 17, 1986).

*Fallon* addressed this head-on in the context of an employee's religious objections to the flu vaccine. 877 F.3d at 488-94. Similar to Amos, the employee in *Fallon* espoused a Buddhist maxim[5] and believed that "one should not harm their [sic] own body and strongly believe[d] that the flu vaccine may do more harm than good." *Id.* at 492. The employee concluded that complying with his employer's flu vaccine mandate "would violate his conscience as to what is right and what is wrong." *Id*.

The Third Circuit evaluated the employee's vaccine objections using the three-fact test adopted in *Africa*:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system

---

[5] "Do not believe in anything simply because you have heard it. Do not believe in anything simply because it is spoken and rumored by many. Do not believe in anything merely on the authority of your teachers and elders. Do not believe traditions because they have been handed down for many generations. But after observation and analysis, when you find that anything agrees with reason and is conducive to the good and benefit of one and all, then accept it and live up to it." *Fallon* at 492.

> as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Id.* at 492-93. The court ultimately concluded that the employee's vaccine objections were not religious in nature for Title VII purposes, and its analysis could almost be carbon-copied here:

> It does not appear that these beliefs address fundamental and ultimate questions having to do with deep and imponderable matters, nor are they comprehensive in nature. Generally, he simply worries about the health effects of the flu vaccine, disbelieves the scientifically accepted view that it is harmless to most people, and wishes to avoid this vaccine. In particular, the basis of his refusal of the flu vaccine—his concern that the flu vaccine may do more harm than good—is a medical belief, not a religious one. He then applies one general moral commandment (which might be paraphrased as, "Do not harm your own body") to come to the conclusion that the flu vaccine is morally wrong. This one moral commandment is an "isolated moral teaching"; by itself, it is not a comprehensive system of beliefs about fundamental or ultimate matters. Thus, we do not believe that either of the first two factors in *Africa* is met here.
>
> Fallon fares no better under the third factor. Fallon's views are not manifested in formal and external signs, such as "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions."
>
> For this reason, because Fallon's beliefs do not satisfy any of the *Africa* factors, Fallon's beliefs do not occupy a place in his life similar to that occupied by a more traditional faith. His objection to vaccination is therefore not religious and not protected by Title VII.

*Id.* at 492.

13

While this Court has never formally endorsed *Fallon*, several district courts in this circuit have recently relied on it to dismiss religious discrimination claims similar to Amos' claims against Lampo. *See, e.g., Sturgill v. American Red Cross*, 2023 WL 8701293 at *9 (E.D. Mich. Dec. 15, 2023); *Prida v. Option Care Enterprises, Inc.*, 2023 WL 7003402 at *4 (N.D. Ohio Oct. 24, 2023); *Lawhead v. Brookwood Management Co., LLC*, 2023 WL 2691718 at *4 (N.D. Ohio March 29, 2023). Like the district court below, the Northern District of Ohio addressed this issue at length in *Prida*, noting "the majority of courts that have considered [and dismissed] similar claims by plaintiffs seeking to cloak scientific or political beliefs in religious language" and warning that "[such claims] would, if allowed, grant the plaintiff carte blanche to accept or reject nearly any condition of…employment." 2023 WL 2691718 at *4.

This Court has previously endorsed the three *Africa* factors. *Cutter v. Wilkinson,* 349 F.3d 257, 267-68 (6th Cir. 2003), *rev'd on other grounds*, 544 U.S. 709 (2005); *but see Lucky v. Landmark Medical of Michigan, P.C.,* 103 F.4th 1241(6th Cir. 2024) (reversing dismissal of religious discrimination claim reached, in part, using *Africa* factors). And the *Africa* factors have been endorsed and applied by the district court below and others in this circuit to dismiss religious discrimination claims. *See, e.g.,*

*Lucky v. Landmark Medical of Michigan, P.C.,* 2023 WL 7095085 at *6 (E.D. Mich. Oct. 26, 2023), rev'd 103 F.4th 1241 (6th Cir. 2024); *Carpenter v. Wilkinson,* 946 F. Supp. 522, 526 (N.D. Ohio 1996).

However, the panel in this case essentially forbade any examination of the religious nature of Amos' purported beliefs regarding COVID-19 precautions at the pleading stage. (Doc. #32-2 at pp. 9, 10 FN 5). And in fairness to this panel, that is consistent with other recent decisions of this Court. *See, e.g., Lucky v. Landmark Medical of Michigan, P.C.*, 103 F.4th 1241 (6th Cir. 2024). But that practice leads to cases like this one, which become nearly impossible to dismiss until summary judgment and waste litigant and judicial resources.

The door for Title VII religious discrimination claims is propped open in this circuit, but the district court below, others throughout this circuit, the Third Circuit, and the Supreme Court have all demonstrated how courts can more actively ferret out the claims that Title VII was intended to advance at the pleading stage. Lampo urges the Court to grant en banc review to formally adopt a more rigid test for evaluating "religious" beliefs and practices at the pleading stage in Title VII cases, apply that test to Amos' Title VII claims against Lampo, and affirm their dismissal.

## CONCLUSION

Lampo asks the Court for en banc review of the panel's decision in this case to (1) clarify the legal standard for religious non-conformity claims under Title VII and (2) adopt and apply a more rigid pleading standard for "religious" beliefs and practices under Title VII.

Respectfully submitted,

/s/Daniel Crowell
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned certifies that this petition complies with the type-volume limitations of Fed. R. App. P. 35(b)(2)(A). Apart from the items that may be excluded, this brief contains 3,054 words.

/s/Daniel Crowell
Leslie Goff Sanders (TN #18973)
Daniel Crowell (TN #31485)
Stephen Stovall (TN #37002)
BARTON LLP
611 Commerce Street
Suite 2911
Nashville, TN 37203
Telephone: (615) 340-6790
lsanders@bartonesq.com
dcrowell@bartonesq.com
sstovall@bartonesq.com

*Attorneys for Defendant-Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 20, 2024, I filed the foregoing document via the Court's electronic filing system, which will automatically notify and send a copy of the filing to:

Jonathan Street
Lauren Irwin
Emily Costanzo
The Employment & Consumer Law Group

*Attorneys for Plaintiff-Appellant*

/s/Daniel Crowell
Daniel Crowell
*Attorney for Defendant-Appellee*